**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**James Raymond BEASON, Jr.,
Defendant-Appellant.**

**No. 82–1250
Summary Calendar.**

United States Court of Appeals,
Fifth Circuit.

Oct. 15, 1982.

Rehearing Denied Nov. 8, 1982.

Certiorari Denied Jan. 24, 1983.
See 103 S.Ct. 828.

Gary D. Jackson, Dallas, Tex., Court-Appointed, for defendant-appellant.

James A. Rolfe, U. S. Atty., Paul Coggins, Asst. U. S. Atty., Dallas, Tex., for plaintiff-appellee.

Before GEE, RANDALL and TATE, Circuit Judges.

TATE, Circuit Judge:

The defendant Beason appeals his conviction, upon jury trial, of two counts of violations of federal law: (1) the unlawful possession of five unregistered firearms (homemade hand grenades), 26 U.S.C. § 5861(d), and (2) of the unlawful making of these firearms by not paying the making tax, 26 U.S.C. § 5861(f).[1] The government concedes that under *United States v. Stout,* 667 F.2d 1347 (11th Cir. 1982), the conviction on the latter count must be reversed (see note 1). As to Count 1, we affirm the conviction, rejecting the defendant's contentions relating to (a) the sufficiency of the evidence, (b) whether a self-proving certificate used to prove possession without registration was properly authenticated within the requirements of Fed.R.Evid. 902, and (c) whether the government had the burden of proving an exception to the firearms-registration requirement.

*The Facts*

In early January, 1982, Beason and codefendant Grazier[2] were employed by Steven Cochran to clean cars at Cochran's used car lot in DeSoto, Texas. Cochran served as a paid informant for the Bureau of Alcohol, Tobacco and Firearms (the Bureau). Cochran notified the Bureau's Special Agent

---

1. With respect to the first count, Section 5861(d) provides that "it shall be unlawful for any person ... to receive or possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record." Section 5871 prescribes penalties for violations. "Firearm" is defined in 26 U.S.C. § 5845 to include any "destructive device," which means "any explosive, incendiary, or poison gas (A) bomb, (B) grenade, ... or (F) similar device .... The term 'destructive device' shall not include any device which is neither designed nor redesigned for use as a weapon ... or any other device which the Secretary finds is not likely to be used as a weapon."

With respect to the second count, the conviction the government concedes we must reverse, Beason was found guilty of violating Section 5861(f), which provides that it is unlawful "to make a firearm in violation of the provisions of this chapter." This section refers to Section

5821, which provides for a special making tax to be paid by those persons manufacturing firearms. Again, Section 5871 prescribes penalties for violations. The government concedes that *United States v. Stout,* 667 F.2d 1347, 1353 (11th Cir. 1982), requires reversal as to this count; as in *Stout,* the self-proving certification of non-payment of the tax was executed by a custodian of weapons registration records who did not have custody of the tax-stamp records that would reflect whether or not a tax had been paid.

Imposition of a three year sentence on both counts, to run concurrently, was suspended, and Beason was placed on probation for three years.

2. Grazier was jointly tried with the defendant and also convicted. His appeal, if any, is not before us.

William Daniel Dwight that he had seen both Beason and Grazier throw and explode a homemade grenade in the field behind the car lot. In Beason's presence, Grazier told Cochran that he had made the object in his van and offered to manufacture more for sale.

On January 11, 1982, Cochran introduced Agent Dwight, acting in an undercover capacity, to Grazier. In this first meeting, Grazier offered to make six grenades for Dwight for $30.00 plus the costs of materials. On January 13, 1982, Dwight joined Grazier to purchase the materials for making grenades, including carbon dioxide cartridges, flash powder, fuses, rubber cement and BB pellets.

On January 29, 1982, Grazier and Dwight met again at the car lot, where Grazier introduced the agent to the appellant, Beason. According to Dwight, Beason said that "we" had almost finished the grenades, and that the grenades would be ready on February 2, 1982. Dwight told the pair that he wanted to use the grenades during a fishing trip.

Dwight and other law enforcement officials, supposed companions to the fishing trip, met Grazier and Beason at a truck stop on February 2, 1982. After greeting Dwight, Grazier and Beason went to Grazier's van where they remained for about twenty minutes. Grazier walked out of the van with a box, which he handed to Dwight. After Dwight saw that the box contained five grenades, he arrested Grazier and Beason.

The grenades were approximately three to four inches long, with a fuse at one end and embedded with BB's. At trial, an expert on explosives described the grenades as "high order explosives" which were, in her opinion, "destructive devices." The government also introduced as evidence a certificate from the Bureau stating that Beason had not registered, or made application to manufacture the grenades or paid the making tax on them.

On appeal, Beason challenges the sufficiency of the evidence connecting him with the manufacture of the unregistered firearms. He also claims that the trial judge improperly admitted the Bureau's certificate of nonregistration of the grenades which was not properly authenticated in accordance with Fed.R.Evid. 902 because there was no independent evidence that the Secretary of the Treasury, in charge of the registration applications, had delegated authority to the statement maker to authenticate documents for the Bureau. Finally, Beason contends that the homemade hand grenades were not firearms possessed in violation of the statute because the government failed to disprove a statutory exception to the definition of "destructive device" that excludes objects which are "neither designed nor redesigned for use" or "likely to be used" as a weapon.

*Sufficiency of the Evidence*

Beason challenges the sufficiency of the evidence to convict him of the unlawful possession of unregistered firearms. Beason had moved for a judgment of acquittal both after the government presented its case and at the close of the evidence. Specifically, he maintains that the only evidence incriminating him is Agent Dwight's testimony that Beason stated that the grenades would be ready on February 2; Beason emphasizes that Dwight had arranged manufacture of the grenades at two earlier meetings with the codefendant *Grazier,* who was the person who actually delivered the firearms to Dwight.

■■ In reviewing the sufficiency of the evidence in a criminal case an appellate court must view the evidence and all inferences that reasonably may be drawn from it in a light most favorable to the government and accept all credibility choices that tend to support the jury's verdict. *United States v. Rodriguez,* 654 F.2d 315, 317 (5th Cir. 1981). The appellate court will reverse only if a reasonable jury was bound to conclude that *guilt was not proven beyond a reasonable doubt. United States v. Khamis,* 674 F.2d 390, 393 (5th Cir. 1982); *Rodriguez, supra.*

■■ Beason's mere association with Grazier is, of course, insufficient evidence

to support his conviction. *See United States v. Yaniz-Cremata,* 503 F.2d 963, 964 (5th Cir. 1974). Although Beason was not seen in physical possession or making the devices with Grazier, the "possession" necessary for conviction may be constructive as well as actual physical possession. The person cannot escape conviction by avoiding physical contact with the device if he has power and intention to exercise control over the object, and plans its disposition or can assure delivery either directly or through others. *See United States v. Virciglio,* 441 F.2d 1295, 1298 (5th Cir. 1971). *See also United States v. Birmley,* 529 F.2d 103, 107 (6th Cir. 1976); *United States v. Hawke,* 505 F.2d 817, 823 (10th Cir.), *cert. denied,* 420 U.S. 978, 95 S.Ct. 1404, 43 L.Ed.2d 658 (1974). Possession of proscribed firearms may be joint; *see Virciglio,* 441 F.2d at 1298.

■ As the facts above stated show, the testimony at trial, setting forth Beason's statements of when the grenades would be ready and his close proximity to Grazier and the grenades before, during and after delivery, sufficiently supports a reasonable inference that Beason jointly participated in Grazier's efforts to supply the grenades to Dwight and had constructive possession of them in violation of 26 U.S.C. § 5861(d). A jury could reasonably conclude that the government proved guilt beyond a reasonable doubt, so we find that the evidence was sufficient to sustain Beason's conviction under the first count.

*Admission of the Bureau's Certificate*

Beason challenges the district court's determination to admit into evidence a self-authenticating document from the Department of Treasury, Bureau of Alcohol, Tobacco and Firearms, to prove that Beason had not registered the handmade grenades. The government proffered the certificate under Fed.R.Evid. 803(10) as a hearsay exception "[to] prove the absence of a record . . . or the nonoccurrence or nonexistence of a matter of which a record . . . was regularly made and preserved by a public office or agency." The certificate stated that the National Firearms Registration and Transfer Record (the NFRTR)[3] had been searched under Beason's name and that no evidence was found that "any destructive devices" "are registered to, or have been acquired by lawful manufacture, importation, or making by, or transfer to" Beason.

In *United States v. Stout,* 667 F.2d 1347, 1351–53 (11th Cir. 1982), the Court of Appeals for the Eleventh Circuit refused admission of a similar document as proof of nonpayment of the tax (and the government has conceded that the conviction on Count 2 should be reversed for this reason, see note 1, *supra*), for the only evidence presented on the issue was the certificate from the NFRTR. The government correctly notes, however, that in *Stout* the court found that the certificate is nonetheless validly admitted proof of nonregistration of the firearms,[4] an element of illegal possession of unregistered firearms, the count of conviction which is now before us for review.

On appeal, Beason objects to the authentication of the document, claiming it does not comply with Fed.R.Evid. 902[5] require-

**3.** The NFRTR is a central registry maintained by the Secretary of the Treasury listing "all firearms in the United States which are not in the possession or under the control of the United States." 26 U.S.C. § 5841.

**4.** The *Stout* court noted that "[t]he district court clearly should have struck out all portions of the two NFRTR certificates *except those parts dealing with the lack of registration.*" 667 F.2d at 1352 (emphasis added). *See also Robbins v. United States,* 476 F.2d 26, 29 (10th Cir. 1973) (failure to register may be proved by NFRTR certification).

**5.** In pertinent part, Fed.R.Evid. 902 provides:

Extrinsic evidence of authenticity as a condition precedent to admissibility is not required with respect to the following:

(1) *Domestic public documents under seal.* A document bearing a seal purporting to be that of the United States . . . or of a political subdivision, department, officer, or agency thereof, and a signature purporting to be an attestation or execution.

\* \* \* \* \* \*

(4) *Certified copies of public records.* A copy of an official record or report or entry therein, or of a document authorized by law to be recorded or filed and actually recorded or filed in a public office, including data com-

ments for self-authentication because either the Secretary of the Treasury, statutorily required to maintain the NFRTR records, must certify the search, or if a delegate of the Secretary authenticates it, proof of such delegation by the Secretary must come from the Secretary himself—*i.e.,* Beason argues that the present custodian's certificate that the Secretary had delegated custody and control of the documents to her is not self-proving.

The courts have previously upheld the admissibility of NFRTR certificates against hearsay and confrontation clause challenges. *See, e.g., United States v. Harris,* 551 F.2d 621, 622 (5th Cir.), *cert. denied,* 434 U.S. 836, 98 S.Ct. 125, 54 L.Ed.2d 98 (1977); *United States v. Cruz,* 492 F.2d 217, 220 (2d Cir.), *cert. denied,* 417 U.S. 935, 94 S.Ct. 2649, 41 L.Ed.2d 239 (1974); *United States*

*v. Mix,* 446 F.2d 615, 622–23 (5th Cir. 1971). However, this case seems to be the first one in which the self-authentication of the document is questioned.

■ We find no merit to Beason's contention. Certification by the "officer having legal custody of the record" satisfies the requirements of Fed.R.Evid. 902.[6] Extrinsic evidence of custody and of delegation is not necessary where, as here, there is a signed certification by the public officer having actual legal custody of the documents. We find no requirement in the Rule that such, actual custodian of the records also secure further certification(s) of the delegation of custodial authority down from the head of the department or agency entrusted by law with custody of the document.[7] *See, e.g.,* McCormick on Evidence

pilations in any form, certified as correct by the custodian or other person authorized to make the certification, by certificate complying with paragraph (1), (2), or (3) of this rule or complying with any Act of Congress or rule prescribed by the Supreme Court pursuant to statutory authority.

Here, the lack of any record of any registration of destructive devices by Beason is attested to by the National Firearms Act Specialist, M. Colleen Davis, who states that she is a custodian of the records. The attestation is accompanied by certification by the Acting Chief of the National Firearms Act branch of the Department of Treasury, who states that Davis has "custody and control of the National Firearms Registration and Transfer Record pursuant to a delegation of authority by the Secretary of the Treasury."

6. Fed.R.Civ.P. 44(a)(1) and (b), which applies to criminal trials as well, *see* Fed.R.Crim.P. 27, provides that authentication of an official record may be attested to by the legal custodian of the record in the following manner:

(a) Authentication. (1) Domestic. An official record kept within the United States... or an entry therein, when admissible for any purpose, may be evidenced by an official publication thereof or by a copy attested by the officer having the legal custody of the record, or by his deputy, and accompanied by a certificate that such officer has the custody. The certificate may be made by a judge of a court of record of the district or political subdivision in which the record is kept, authenticated by the seal of the court, or may be made by any public officer having a seal of office and having official duties in the district or political subdivision in which the

record is kept, authenticated by the seal of his office.

(b) Lack of Record. A written statement that after diligent search no record or entry of a specified tenor is found to exist in the records designated by the statement, authenticated as provided in subdivision (a)(1) of this rule in the case of a domestic record ... is admissible as evidence that the records contain no such record or entry.

7. *United States v. Mekijan,* 505 F.2d 1320 (5th Cir. 1975), upon which Beason relies, is not to the contrary. At issue there was the admissibility of some "history files" of medicare rules changes, which had been maintained by Fishman, a non-custodial official entrusted with the duty of coordinating and issuing medicare instructions to insurance carriers that process the claims. 505 F.2d at 1323. The government attempted to authenticate these rules changes as shown in Fishman's "history files" through the testimony of Fishman. In rejecting this claim and holding the "history files" maintained by the non-custodian Fishman to be inadmissible to prove the rules changes, the court states that "the government must offer properly certified copies of the rules then in effect[,] or those individuals authorized to certify authenticity must appear in court to lay the predicate for the admission of the history files." Thus, the court simply held that agency rules or rules changes cannot be authenticated by a non-custodian officer who claims to have kept a current file of the rules changes.

Here, of course, a custodian officer properly authenticated the document of agency record in question.

§ 224 (2d ed. 1972) (authentication of official document by its official custodian).

*Statutory Exceptions*

■ As noted, Count 1 charged Beason with illegal possession of unregistered firearms. "Firearm" is defined in 26 U.S.C. § 5845 to include any "destructive device," which is further defined as "any explosive, incendiary or poison gas ...... bomb [or] grenade." Specifically *excluded* from the definition is any device which is "neither *designed* nor redesigned *for use as a weapon* ... or any other device which the *Secretary finds is not likely to be used as a weapon* ...." *Id.* (Emphasis supplied.)

Beason contends that the government did not present evidence that the five explosive objects do not fall within either of the statutory exceptions: (a) of being "designed for use as a weapon", or (b) "likely to be used as a weapon." He argues that the government thus failed to meet its burden of proof as to every element of the offense, so that he was entitled to a directed verdict of acquittal.

The government contends that the exceptions to the definition of destructive devices are affirmative defenses that the defendant must raise, and that it rebutted the only exception the defendant raised, the "designed for use as a weapon" exception. In its charge to the jury, the district court instructed that the government bore the burden of proving that Beason possessed unregistered destructive devices and set forth only the "designed for use" exception. However, the court overruled Beason's objection to the charge as not also excepting from the definition of a destructive device "any other device *which the Secretary finds is not likely to be used as a weapon.*" R.II, p.234. The apparent reason for the overrul-

ing is that there was no evidence that the *Secretary* had found that grenades are not likely to be used as weapons.

First, we find that the exceptions contained in the definition of destructive device should be treated as affirmative defenses rather than as part of the elements of the offense. Exceptions to statutory definitions are generally matters for affirmative defenses, especially where the elements constituting the offense may be defined accurately without any reference to the exceptions. *Scher v. United States,* 305 U.S. 251, 254, 59 S.Ct. 174, 176, 83 L.Ed. 151 (1938); *United States v. Cook,* 84 U.S. (17 Wall.) 168, 173, 21 L.Ed. 538 (1872); *Queen v. United States,* 77 F.2d 780, 782 (D.C.Cir.), *cert. denied,* 295 U.S. 755, 55 S.Ct. 917, 79 L.Ed. 1698 (1935) (liquor tax). Since "firearm" is defined as including destructive devices, such as explosive grenades, the elements of the offense may be defined accurately without reference to the exceptions, which therefore should be treated as affirmative defenses. *Cf. United States v. Campbell,* 685 F.2d 131, 132 (5th Cir. 1982) (indictment using the term destructive device sufficiently states elements of the offense). *See also United States v. Dalpiaz,* 527 F.2d 548, 552 (6th Cir. 1975); *United States v. Oba,* 448 F.2d 892, 894 (9th Cir. 1971). In addition, the legislative history of Section 5845 suggests that Congress intended the exceptions to operate as affirmative defenses. *See* S.Rep.No. 1501, 90th Cong., 2d Sess. 47 (1968).[8]

Second, regardless of whether Beason raised one or both exceptions as affirmative defenses, the government rebutted his showings. The record shows that Beason cross-examined the Bureau's Agent Dwight with respect to the use and purpose of the grenades, especially Dwight's statements

8. S.Rep.No. 1501 states in part:

This subsection also specifically provides exceptions to the definitions of the term "destructive device." Establishment by a person that an exception is applicable is a matter of affirmative defense. The Government is not required to allege or prove that exception is inapplicable. (citations omitted.)

\* \* \* \* \* \*

Finally, there is an exemption for any other device which the Secretary or his delegate finds is not likely to be used as a weapon. There may be unusual situations which can be dealt with on the basis of specific findings. Any device which is otherwise within the definition would not be exempt under this subparagraph in the absence of the required finding.

that he would use them for fishing. R. 67–70. On redirect, the government elicited testimony from Dwight that grenades used only for fishing would not have employed BB pellets in their manufacture as these grenades did. R.87–89.

We therefore find that the defendant was not entitled to a directed verdict of acquittal on the grounds of the statutory exceptions to the definition of firearm.

*Conclusion*

Because the government's evidence with respect to Beason's illegal possession of unregistered destructive devices was properly admitted and sufficient to support the jury's finding of guilt, we AFFIRM his conviction on Count 1. Because the government's certificate, its only evidence, was inadmissible hearsay with respect to nonpayment of the making tax (see note 1), we REVERSE Beason's conviction on Count 2.

REVERSED in part; AFFIRMED in part.