Harvey Wayne TURNER,
Plaintiff-Appellant,

v.

Dan V. McKASKLE, Acting Director,
Texas Department of Corrections,
Respondent-Appellee.

No. 82–1574.

United States Court of Appeals,
Fifth Circuit.

Dec. 27, 1983.

Michael P. Lynn, Court-appointed, Dallas, Tex., for plaintiff-appellant.

Barbara J. Lipscomb, Austin, Tex., for respondent-appellee.

Before GARZA, WILLIAMS and HIG-GINBOTHAM, Circuit Judges.

JERRE S. WILLIAMS, Circuit Judge.

State prisoner Harvey Wayne Turner applied for a writ of habeas corpus, 28 U.S.C. § 2254, in the Northern District of Texas. He argued that there was insufficient evidence to support his state conviction for murder. The district court denied his application for habeas corpus. We find it necessary to reverse and grant the writ.

## I. FACTS

In January, 1976, Parker County deputies discovered a decomposing body in an abandoned shack. The decedent had died sometime between October and December of 1975 from a short range shotgun blast to the head. By interviewing people whose phone numbers were written on a card found on the decedent's person, police identified the decedent as Clifford Carr. Police learned that Carr had last been seen, in early November 1975, with Turner and Milton Crow.

Police located Turner in a Denver, Colorado jail. Some inexpensive personal belongings of Carr's were found in the car that Turner and his friend Crow had driven to Denver. Police returned Turner to Texas. On January 19, 1976, Turner made a statement which admitted his presence near the scene of the crime. Turner was tried and convicted of murder on the basis of his statement and the above mentioned circumstantial evidence. The relevant portions of Turner's statement read as follows:

"When we got to Wichita Falls on the 6th we went to see M.C. Harvey at his house, he was not at home at the time. We met him later and went out with him to the Gateway Motel first, then we picked up Cliff Edwards [Clifford Carr] at the Sands Motel. M.C. Harvey rode with us and the four of us went to the American Legion Hall and drank until it closed. M.C. Harvey left with his girl friend and we took Cliff back to the Sands Motel. We drove around until the next morning and went back to the Sands and picked Cliff up again, to take him to Fort Worth with us. We left Wichita Falls around 10 a.m. and got to Fort Worth about 12:30 or 1:00 p.m. We went to the Vally [sic] View Motel at Riverside Dr. and Berry St. Crow and Cliff left and went to the Caravan Motel on Jacksboro Highway to try and find the kid a place to stay. They came back before 4:00 p.m. and I left with them because the Valley View rents by the hour until 4:00 p.m. We went to Northside and came out through Azle. I remember going to a joint on exchange, it used to be Jim's Place. Crow was driving and they were talking about shooting those guns. We drove off the highway on some old country roads somewhere and Crow stopped at an old bridge somewhere and they both got out and was shooting at something down in the creek. I got out and leaned on the car while they were shooting. We drove on and I remember Crow saying something about having some kinfolks that lived somewhere around where we were. [We turned off the road into a gate and went up a road to an old shack and Crow and Cliff got out and started shooting the guns again. I opened the right rear door where I was sitting and sat there. Crow had parked with the right side of the car toward the shack. They were walking all around the shack looking for junk to shoot at. Cliff must have shot the .22 at least 15 or 20 times. Crow shot 6 or 7 times with the .38 and fired the shotgun 3 or 4 times. Crow and the kid went into the shack from the east door and Crow came out a little later and came to the car. He shut the trunk and got in told me to get in the front seat. He said 'Come on up here in the front, we're fixing to go.' I asked

him 'what about the kid.' He said 'he ain't going back with us.'] Nothing else was said.

"We went back to the Vally [sic] View Motel and I got a room and went to bed. Crow left and came back the next morning with two guys and picked me up and then let the guys out on Austin St. I don't remember seeing in the trunk until we got to Colo. I saw the musical equipment at Wichita Falls when we loaded it, and it was not there when we got to Colo. I remember the microphone and a little radio looking thing in the car before I was arrested in Denver. When we got into that trouble in Denver, Crow started bringing up an old deal in Ruidosa and was threatening me, so I made him get out of the car and I haven't seen him since. I was arrested a little while later."[1]

## II. SUFFICIENCY OF THE EVIDENCE—MURDER

■ In determining whether there was sufficient evidence to support a state conviction, the Court must, considering all the evidence in the light most favorable to the prosecution, determine whether a rational factfinder could have found the defendant guilty beyond a reasonable doubt based on the record evidence presented at trial. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). The Court must refer to the substantive elements of the criminal offense as defined by state law. *Id.* n. 16. Under Texas law a person commits murder if he (1) intentionally or knowingly causes the death of an individual, or (2) intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual. Tex.Penal Code Ann. § 19.02(a) (Vernon 1974). As we point out in the analysis below, if the jury credited Turner's statement there is not enough evidence to convict. On the other hand if the jury did not credit Turner's statement, there is virtually no evidence of significance connecting Turner with the crime.

■ The government points to four facts which are allegedly sufficient, in combination, to establish Turner's guilt beyond a reasonable doubt: (1) the fact that Turner admitted being with Carr on the day of the murder;[2] (2) his presence near the scene of the crime; (3) his departure from Texas the day after the murder; and (4) his possession of some of Carr's personal belongings. Although the jury was admittedly allowed to draw inferences from those facts, we do not feel that the cumulative inferences were sufficient to support Turner's conviction. To affirm his conviction would be to deny the presumption of his innocence and establish a presumption of guilt in its stead.

The fact that Turner admitted being with Carr on October 7 is insufficient to establish that he committed murder. So is Turner's admission that he was outside the shack. Turner's statement does not admit his guilt, and does not provide any evidence of intent knowingly to cause serious bodily injury to Carr, or to cause his death. Some inexpensive personal belongings that had belonged to Carr, including some cufflinks, rings, a money clip, a toy pistol, and a police badge, were found in the car in which Turner had traveled to Denver. Further, the circumstantial evidence of either the personal belongings in the car or of Turner having been one of the last people to be seen with Carr, does not reach the level of proving Turner's intent. If the jury chose to disbelieve Turner's statement, as its verdict indicates it did, the only evidence with which to connect Turner to the crime at all was the presence of Carr's belongings in the car and the fact that Turner had been seen with Carr on October 6. The Texas Court of

---

**1.** The record does not indicate what happened to Milton Crow, although it is clear he was never prosecuted for Carr's death. In objections to the magistrate's report, Turner alleged that Crow was dead on the date Turner gave his statement to Parker County deputies.

**2.** Although the coroner could say only that Carr had died sometime between early October and late December, we will assume that Carr was in fact killed on October 7, 1975.

Criminal Appeals has stated that rejection of a defendant's statement by a trier of fact does not serve to prove the missing elements of the offense. *Wright v. State,* 603 S.W.2d 838, 840 (Tex.Cr.App.1979) (en banc). Therefore, although the jury could have disbelieved Turner's statement, mere disbelief of the statement did not provide evidence with which to convict Turner.

■ This Court has long rejected the proposition that "mere presence" at the scene of a crime is alone sufficient proof of conspiracy. *United States v. Cochran,* 697 F.2d 600, 603 (5th Cir.1983). Likewise, we reject the view that presence at the scene of the crime is alone sufficient proof of participating in, or perpetrating, the substantive offense. In *United States v. Beason,* 690 F.2d 439, 440 (5th Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 828, 74 L.Ed.2d 1023 (1983), we said that the mere association of the defendant with the maker of unregistered firearms was insufficient to support his conviction for possession of unregistered firearms. It was an undercover agent's testimony that the defendant had made representations to him regarding the date the firearms would be available, and the defendant's proximity to the maker before, during, and after the delivery of the firearms, that allowed the defendant to be found in constructive possession of the firearms. Although Turner's statement says he was with Crow before and after Carr's murder, if Turner's statement is credited he was not actually in the presence of Crow and the victim when the murder occurred. Turner made no statements which would indicate he knew and approved of a plan to kill Carr, let alone of his being a participant in the murder.

The government's argument that Turner's flight from Fort Worth to Denver is strong evidence of Turner's guilt is also unpersuasive. Turner's trip to Denver is insufficient to fill the role of compelling evidence of guilt in a murder conviction. As we reasoned in *United States v. Myers,* 550 F.2d 1036, 1049 (5th Cir.1977) (cites omitted),

Analytically, flight is an admission by conduct. Its probative value as circumstantial evidence of guilt depends upon the degree of confidence with which four inferences can be drawn: (1) from the defendant's behavior to flight; (2) from flight to consciousness of guilt; (3) from consciousness of guilt to consciousness of guilt concerning the crime charged; and (4) from consciousness of guilt concerning the crime charged to actual guilt of the crime charged. The use of evidence of flight has been criticized on the grounds that the second and fourth inferences are not supported by common experience and it is widely acknowledged that evidence of flight or related conduct is "only marginally probative as to the ultimate issue of guilt or innocence."

In this case the government failed to establish that the above four inferences could be reliably drawn. First, the government failed to offer convincing evidence that Turner's behavior in traveling from Fort Worth to Denver was actually flight. It appears that Turner was an itinerant worker with no fixed home, who had recently been asked to move out of his girlfriend's home. In light of that, Turner's trip to Denver was not clearly flight rather than mere "traveling about." Second, if Turner did not shoot Carr, but Crow did, Turner's "flight" to Denver could be attributed to fear that he would be held responsible for Carr's death, as indeed he was. That simple explanation undermines the degree of confidence with which the second, third and fourth inferences could be drawn. The fact that Turner traveled to Denver, then, is not sufficient evidence to uphold his conviction for murder.

The last fact upon which the government relies is the presence of a few of Carr's personal belongings of small value, such as several pairs of cufflinks, in the car which Turner was driving when he was arrested in Denver. In *United States v. Burns,* 597 F.2d 939, 942 (5th Cir.1979), *citing Wilson v. United States,* 162 U.S. 613, 619, 16 S.Ct. 895, 898, 40 L.Ed. 1090 (1896), we stated that "[p]ossession of the fruits of crime, recently after its commission, justifies the

inference that the possession is guilty possession, and, though only *prima facie* evidence of guilt, may be of controlling weight unless explained by the circumstances or accounted for in some way consistent with innocence." The jury could not properly have inferred merely from the presence of Carr's belongings in the car in Turner's possession that Turner had murdered Carr to get possession of those items. The jury could not even have inferred that Turner had stolen those items since there was no showing that the items were, in fact, stolen. It is possible that Carr had given the items to Crow or Turner. Carr might have left them in the car when all three men were together. If the items were in fact stolen, it is also possible that Crow, rather than Turner, was responsible for the theft. It is even possible that Turner was unaware of the items' presence in the car. Certainly the presence of the items does nothing to prove that Turner intended to murder Carr.

 We must conclude that none of the inferences the government sought to raise is sufficient to support Turner's conviction. Adding inference to inference does not suffice to support the government's case, either. The Supreme Court has indicated that a court reviewing a state conviction under *Jackson* should consider state evidentiary rules in weighing the sufficiency of evidence. *See Moore v. Duckworth,* 443 U.S. 713, 99 S.Ct. 3088, 61 L.Ed.2d 865 (1979) (per curiam); *Harris v. Blackburn,* 646 F.2d 904, 907 (5th Cir.1981). A review of Texas cases indicates that no one of the inferences the government sought to raise is sufficient to establish guilt. Presence at the scene of a crime, even combined with evidence of flight, cannot amount to proof beyond a reasonable doubt that a defendant committed murder. *King v. State,* 638 S.W.2d 903, 904 (Tex.Cr.App.1982). That a

defendant was the last to see a victim alive creates nothing more than a "suspicious circumstance." *Nathan v. State,* 611 S.W.2d 69, 78 (Tex.Cr.App.1981). Flight can evince guilt, but does not establish guilt beyond a reasonable doubt. *Holloway v. State,* 525 S.W.2d 165, 167 (Tex.Cr.App.1975). Possession of a victim's property, if unexplained, can indicate guilt of robbery, but fails to support a conviction for murder without other evidence of guilt. *Flores v. State,* 551 S.W.2d 364, 367–69 (Tex.Cr.App.1977).[3] Under state law, then, there was insufficient evidence to support Turner's conviction for murder.

### III. SUFFICIENCY OF THE EVIDENCE—PARTY TO A CRIME

 Texas law would permit a conviction for murder if the prosecution proved participation in the crime as defined by Tex.Penal Code Ann. §§ 7.01, 7.02 (Vernon 1974). Section 7.01 defines a party to a crime as one "criminally responsible" for the conduct of another. Section 7.02 reads, in pertinent part:

(a) a person is criminally responsible for an offense committed by the conduct of another if:

. . . .

(2) acting with *intent* to promote or assist the commission of the offense, he solicits, encourages, directs, aids or attempts to aid the other person to commit the offense. . . .

(Emphasis added.)

As was discussed above, neither Turner's statement nor any of the circumstantial evidence proved an intent to harm Carr. The most that could be inferred from the evidence is that Turner knew or should have known that something had happened to Carr when Carr did not return to Fort Worth with Crow and him. We do not

---

**3.** Even if Texas law did allow any one of these inferences to support guilt of murder beyond a reasonable doubt, we are making a determination of whether there was the minimum amount of evidence supporting Turner's conviction necessary to satisfy federal due process. Therefore state evidentiary rules could not necessarily preclude a review of sufficiency. *Moore* requires deference to state law, not rigid adherence. In reviewing the sufficiency of evi-

dence under *Jackson,* an inference could not establish guilt unless, on the evidence in the case, a rational connection existed between the fact established and the fact inferred. *Cf. Ulster County Court v. Allen,* 442 U.S. 140, 156–57, 99 S.Ct. 2213, 2224, 60 L.Ed.2d 777 (1979); *accord, United States v. Michelena-Orovio,* 702 F.2d 496, *aff'd,* 719 F.2d 738 (5th Cir.1983) (en banc).

speculate as to whether this circumstance is sufficient to uphold a conviction for being an accessory after the fact. We are certain that it is not sufficient to find a person guilty of acting with prior intent to aid in the commission of murder. Turner's application for a writ of habeas corpus must be granted. Since our decision is based upon the sufficiency of the evidence to support the conviction, defendant may not be tried again. *Burks v. United States,* 437 U.S. 1, 18, 98 S.Ct. 2141, 2150, 57 L.Ed.2d 1 (1978).

REVERSED.

GARZA, Circuit Judge, dissenting:

I respectfully dissent. Unlike my brothers of the majority, I refuse to impose my views of what the evidence showed which is opposed to the views of the jury that convicted appellant Turner; the Criminal Court of Appeals of the State of Texas which sustained his conviction, the United States Magistrate and the United States District Judge below. I quote from the unpublished opinion of the Court of Criminal Appeals of the State of Texas by which they affirmed Turner's conviction in Cause No. 55,349, *Harvey Wayne Turner, appellant v. State of Texas, appellee,* [unpublished].

After setting out the evidence that was before the jury, the Court of Criminal Appeals of the State of Texas said:

Our review of the evidence must be in the light most favorable to the prosecution. In a circumstantial case that evidence must exclude every reasonable hypothesis except the guilt of the appellant. *Easley v. State,* 564 S.W.2d 742 (Tex.Cr.App.1978); *Suff v. State,* 531 S.W.2d 814 (Tex.Cr.App.1976). However, all the facts of the case need not directly and independently point to the guilt of appellant; the evidence is sufficient if the cumulative force of all incriminating circumstances warrants a conclusion of guilt. *Easley v. State,* supra; *Stogsdill v. State,* 552 S.W.2d 481 (Tex.Cr.App.1977).

The State's brief relies upon several specific facts which tie appellant to the crime. These facts concerning appellant include: presence with Crow and Carr, presence at the scene of the crime, left crime scene with Crow and without Carr, separated from Crow the day after the crime and then met him again, left Texas in flight for Colorado shortly after crime, was arrested in same car that he used the night of the murder, and possession of Carr's property.

As in *Easley v. State,* supra, each of the facts separately do not directly and independently point to the guilt of appellant. However, taken as a whole, the facts led to only one probable conclusion —appellant's guilt, at least as a party, in the murder of Carr. *Ex parte Prior,* 540 S.W.2d 723 (Tex.Cr.App.1976), held that in determining if an accused is a party to the crime, the courts may look to the events before, during and after the commission of the offense. The evidence was sufficient to support the jury's verdict.

Closely related to this claim of insufficiency of the evidence, appellant contends that the State failed to disprove the exculpatory portion of his statement. When the State relies upon a confession to connect a defendant to a crime, they are required to disprove any exculpatory portions of the statement that they introduce. *Grady v. State,* 466 S.W.2d 770 (Tex.Cr.App.1971); *Wormley v. State,* 366 S.W.2d 565 (Tex.Cr.App.1963). This rule applies only to a statement which constitutes an admission of the crime charged plus an assertion which exculpates the accused. *Richards v. State,* 511 S.W.2d 5 (Tex.Cr.App.1974); *Simon v. State,* 488 S.W.2d 439 (Tex.Cr.App.1972).

Appellant's statement does not admit participation in the murder. In it, appellant does not even acknowledge that a murder was committed. Since there was no admission, the State was not bound to disprove that part of appellant's statement which he introduced.

Complaint is next made concerning the court's charge to the jury on the law of parties. Turner contends that the evidence was insufficient to support his conviction as a party and that, since there was no evidence to indicate he was a party, the State was not entitled to a charge on the law of parties.

The evidence indicated that either Crow or appellant actually killed Carr. Under these circumstances the State was entitled to have the case submitted with a charge on the law of parties and the evidence was sufficient to sustain the conviction.

The record before us indicates that the Court of Criminal Appeals held that the decedent Carr was killed either by Crow or Turner. The record also indicates that by the time Turner gave his statement Crow was already dead. The car in which Turner, Crow and decedent Carr were riding in on November the 7th when Crow and Turner left Carr (the Kid) in the old abandoned shack, was in the possession of Turner when he was apprehended. Even though the car belonged to Crow, Turner would have us believe that he and Crow got into an argument and he made Crow get out of his own car.

If we are speculating, as my brethren do, of what inferences can be raised by the evidence in this case, I would imagine that one could infer that Turner not only killed Carr but he also disposed of the witness against him, Crow.

Throughout its opinion the majority recites inferences that could be drawn from the evidence which are not conducive to the finding of Turner guilty of murder either committed by himself or as a party to the murder if Crow in fact committed the murder. I agree with the state when it states in its brief that:

> Among the logical inferences that may be drawn are that Petitioner had an opportunity to commit the murder, a motive—robbery—for the murder, a murder was committed either by Petitioner or by Crow with Petitioner's aid or acquiescence, and Petitioner was conscious of wrongdoing. To the extent that conflicting inferences of the farfetched type Petitioner urges may be drawn, this Court must presume the jury 'resolved any such conflicts in favor of the prosecution, and must defer to that resolution.' *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

Thus, where conflicting inferences may be drawn by the jury from the evidence before them we must presume that they found those inferences which were in favor of the prosecution.

When the Jackson standard is applied to the facts of the instant case it is evident to me that any rational trier of fact could find petitioner guilty as a party to murder beyond a reasonable doubt. I note again that the state trial judge and the jury, the judges of the Texas Court of Criminal Appeals, the United States Magistrate and United States District Judge have all found the evidence sufficient to sustain Turner's conviction. The Court of Criminal Appeals decision carefully discussed the issue of sufficiency and ruled against Turner's claims. Although not conclusive, this result is "entitled to great weight." *Jackson v. Virginia,* 448 U.S. at 310, 99 S.Ct. at 2791, 61 L.Ed.2d at 576. *See also French v. Estelle,* 692 F.2d 1021, 1024 ("state court is entitled to our deference").

Putting myself in the shoes of the trier of fact, the jury in this case, like all the other courts that have passed on this question, I would not say that the evidence was insufficient to sustain Turner's conviction.