**Cecil Ray ISHAM, Petitioner–Appellant,**

v.

**James A. COLLINS, Director, Texas Department of Criminal Justice, Institutional Division, Respondent–Appellee.**

No. 89–1254.

United States Court of Appeals,
Fifth Circuit.

June 26, 1990.

---

1. *See* 2 Larson, Employment Discrimination §§ 54.30 and 54.40.

Robert J. Clary, Johnson, Bromberg & Leeds, Dallas, Tex. (court appointed), for petitioner-appellant.

Cecil Ray Isham, Tennessee Colony, Tex., petitioner-appellant pro se.

Charles Palmer, Asst. Atty. Gen., Austin, Tex., for respondent-appellee.

Before GOLDBERG, GEE, and WILLIAMS, Circuit Judges.

JERRE S. WILLIAMS, Circuit Judge:

Texas state prisoner Cecil Ray Isham was convicted of murder. He appeals the district court's denial of his petition for a writ of habeas corpus to overturn the conviction. Because we find the record evidence insufficient to support Isham's conviction, we reverse and grant the writ.

### I.

On February 21, 1984, the body of William Glen Seay was found in a ditch adjacent to Highway 337 in Palo Pinto County, Texas. Seay had been strangled and stabbed. A police investigation led to Isham, who had been seen with Seay on February 20, 1984. Isham initially denied being with Seay on the 20th. After he was arrested, however, Isham gave police the following statement.

Myself, Russell [Baumgardt] and Glenn [Seay] were riding around in Graham and Possum Kingdom.... We stopped in Graford, Texas at a service station where myself and Russell got out of the car and broke off the rear splash guard because it was dragging. We left the service station and went back towards Graham, Texas.

. . . . .

While we were riding around Glenn hit the front windshield of my car. I told him to quit and Glenn asked me what I was going to do about it. I told Glenn I could whip his ass, but I would rather not. Russell and Glenn started fighting in the car so I pulled over and stopped. Russell and Glenn got out of the car and started fighting on the side of the road. They fought for about five minutes then Russell got back in the car. Russell said "Lets Go." After we left Glenn we went to a gas station in Mineral Wells. It was the first gas station and store on the right. We left Mineral Wells and started back to Graham. We stopped at where Glenn was and Russell got out and rolled him over. Russell was looking for his wallet. Russell got back in the car and

took off. Russell was driving the car. We went to Graham, Texas and I think we went to the Graham Lake.

A couple days later I found Glenn's knife laying open in between the front seats. I took the knife and threw it in the river at South Bend.

A few days before Isham made this statement, Russell Baumgardt had been found hanged in a nearby town.

At Isham's trial for murder, the state introduced Isham's statement. This statement was the only evidence of the events immediately surrounding Seay's death. Also, Allan Kelley, the owner of the Graford service station at which Isham and his cohorts stopped before the murder, testified that he had feared that Isham's group would rob him. He testified that two of the men, apparently Isham and Baumgardt, carried on a whispered conversation outside the presence of Seay. A Palo Pinto County Sheriff's Deputy testified that a half-empty pack of Marlboro 100s was found near Seay's body. The Chief Jailer for the Palo Pinto Sheriff's Department then testified that Isham smoked Marlboro "regulars" while he was incarcerated in the Palo Pinto County jail.

Upon conviction for murder, Isham was sentenced to 35 years in prison. He appealed to the appropriate Texas Court of Appeals, which affirmed his conviction and sentence in an unpublished opinion. The Texas Court of Criminal Appeals thereafter refused Isham's petition for discretionary review. Isham filed a petition for a writ of habeas corpus in the state trial court. The same day the application was filed, the trial court entered findings on Isham's claim (without specifically granting or denying the writ). On the basis of the findings, the Texas Court of Criminal Appeals denied Isham's petition.

Isham then filed this petition for a writ of habeas corpus in federal court under 28 U.S.C. § 2254. Isham claimed that he was convicted on insufficient evidence, that he received ineffective assistance of counsel, that the prosecutor made improper arguments to the jury, and that the trial court erred in allowing the government to introduce evidence at sentencing that the government had failed to provide to Isham in the face of Isham's timely request. The United States Magistrate recommended that Isham's petition be denied. The district court entered an order adopting the Magistrate's findings and conclusions and denying the petition. Isham appeals.

## II.

■ In evaluating whether a state conviction is supported by sufficient evidence, we view the record evidence in the light most favorable to the prosecution and then determine whether a rational factfinder could have found the petitioner guilty beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979); *Turner v. McKaskle,* 721 F.2d 999, 1001 (5th Cir.1983). The Court must apply this standard with reference to the substantive elements of the criminal offense as defined by state law. *Jackson,* 443 U.S. at 324 n. 16, 99 S.Ct. at 2792 n. 16; *Turner,* 721 F.2d at 1001.

■ The state indicted Isham for murder under Section 19.02(a)(1) of the Texas Penal Code, charging that Isham "intentionally and knowingly caused" Seay's death. Because there was no evidence that Isham personally killed Seay, the state attempted to prove that Isham was criminally responsible for Seay's murder under the Texas accessory statute, Texas Penal Code Section 7.02(a)(2). To secure a conviction of one alleged to be an accessory to a crime, the state must prove: (1) that the defendant possessed an intent to promote or assist the commission of the offense and (2) that the defendant committed some affirmative act to assist or encourage the other person in committing the offense. *See* Tex.Penal Code Ann. § 7.02(a)(2) (Vernon 1974). Mere presence at the scene of the crime and flight from the scene do not suffice to prove beyond a reasonable doubt that one is guilty as an accessory to an offense. *Turner,* 721 F.2d at 1003.

■ As support for Isham's conviction, the state relies only on Isham's statement and the testimony of Kelley, the Graford

service station owner. Kelley testified as follows:

> Well, they got out of the car and—two of them did, and raised the hood and didn't do nothing to the car. And the two guys that was out turned around and walked to the back of the car and they acted more like they was talking but they acted more like they was whispering where nobody could hear them. Which there wasn't nobody there except the other two people in the car that was outside."

The state claims that the jury properly could infer from this testimony that the whispered conversation "encompassed either an agreement or encouragement for Baumgardt to commit an offense against Seay." Other plausible inferences, however, also can be drawn. For example, Isham and Baumgardt could have been discussing the broken mud guard, which they subsequently removed from Isham's car. Or, as Kelley feared at the time, they could have been considering robbing him. Nonetheless, even if the jury drew the inference suggested by the state, the inference could not lead a rational factfinder to conclude beyond a reasonable doubt that Isham was guilty as an accessory to Seay's murder.

The state finds no other evidence in the record to support the conviction. Instead, the state concedes that without Kelley's testimony, "it appears that the evidence adduced at Isham's trial is not sufficient" to support Isham's conviction.

The United States Magistrate relied on the Texas Court of Appeal's conclusion that the record evidence was sufficient to support Isham's conviction. The Texas court cited the following evidence:

> [Isham] was not merely present at the scene of the crime ... he obviously made no effort to stop the strangling and stabbing of the victim, ... he left the scene without rendering assistance to the victim, ... he did not assist the victim, ... he returned to the scene when the body was robbed, ... he disposed of the knife which was used to cut the victim's throat, ... he first denied having any knowledge of the event, and ... his statement was not given until after Rus-

sell Baumgardt's dead body was found and after [Isham's] car was identified.

■ It is clear that one can be an accessory to an offense only if the intent to promote or assist and the affirmative act to assist or encourage occur before, or contemporaneously with, the offense. *See Cordova v. State*, 698 S.W.2d 107, 111 (Tex.Crim.App.1985), *cert. denied*, 476 U.S. 1101, 106 S.Ct. 1942, 90 L.Ed.2d 352 (1986). The only event cited in the evidence summarized by the Texas court that occurred prior to or contemporaneously with Seay's death is Isham's failure "to stop the strangling and stabbing of the victim...." There is no evidence, however, that Isham knew that Baumgardt was strangling and stabbing Seay. Thus, although Isham did not prevent the murder, this failure is not evidence that Isham possessed the intent necessary for conviction as an accessory to the offense.

■ The remainder of the events cited by the Texas court occurred after the murder. Post-offense events "that show an understanding and common design to do the prohibited act" may be considered in determining whether one acted as an accessory to an offense. *Id.* We find that the post-offense actions cited by the Texas court do not "show an understanding and common design" to murder Seay. Nonetheless, even if these post-offense events are some evidence of Isham's state of mind after Seay was killed, they are insufficient to prove beyond a reasonable doubt that Isham formed the requisite intent before the offense occurred.

Finally, the testimony about the half-empty pack of cigarettes and Isham's preference for a similar brand is insignificant. The pack that was found near Seay's body yielded no fingerprints. There was no evidence whether Baumgardt or Seay smoked Marlboros. It is clear that Seay's pockets were emptied after he was killed, so the pack may have belonged to Seay. Alternatively, of course, the pack may have been dropped by Baumgardt or a passerby. The evidence was not sufficient to establish a nexus between Isham and the cigarette pack. Further, even if the pack belonged

to Isham, this evidence does not prove beyond a reasonable doubt that Isham was an accessory to Seay's murder, because Isham might have dropped them after he and Baumgardt returned to the body.

We have reviewed thoroughly the testimony and exhibits from Isham's trial. It is clear from this review that the state did not introduce evidence sufficient to permit a rational factfinder to find Isham guilty of murder beyond a reasonable doubt. Accordingly, we reverse the district court and grant Isham's petition for a writ of habeas corpus.

Reversed and Writ of Habeas Corpus Granted.