JOSEPH P. CAULFIELD, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Caulfield v. Commissioner
Docket Nos. 304-89, 305-89
United States Tax Court
T.C. Memo 1993-423; 1993 Tax Ct. Memo LEXIS 434; 66 T.C.M. (CCH) 710; September 14, 1993, Filed *434 Decisions will be entered for respondent. For petitioner: Jerry L. Suddarth. For respondent: Anthony S. Gasaway. WHALEN
WHALEN
MEMORANDUM FINDINGS OF FACT AND OPINION WHALEN, Judge: Respondent determined deficiencies in, and additions to, petitioner's Federal income tax for 1982 and 1984, as follows: Additions to Tax
Sec.
Sec.
Sec.
Year
Deficiency
6653(a)(1)
6653(a)(2)
6661
1982
$ 21,974
$ 1,099
50% of the
--
interest due
on $ 21,974
1984
15,949
797
50% of the
$ 3,987
interest due
on $ 15,949
All section references are to the Internal Revenue Code in effect for the years in issue. The issues for decision are: (1) Whether petitioner realized unreported income of $ 50,538 in 1982, and $ 66,979 in 1984, as determined by respondent; (2) whether petitioner is liable for self-employment tax pursuant to section 1401; (3) whether petitioner is liable for additions to tax for negligence pursuant to section 6653(a)(1) and (2); and, (4) whether petitioner is liable for the addition to tax for substantial understatement of his 1984 tax pursuant to section 6661. FINDINGS OF FACT The parties have stipulated some of the facts in these *435 cases. The Stipulation of Facts and the Supplemental Stipulation of Facts filed by the parties, and the exhibits attached thereto, are hereby incorporated herein by reference. The oral stipulations recited by the parties at the start of trial are also incorporated herein by reference. Petitioner resided in St. Peters, Missouri, at the time each of the petitions which are at issue in these cases was filed on his behalf. During the years in issue, petitioner was engaged in the business of being a public insurance adjuster. He pursued that activity as a sole proprietor. For Federal income tax purposes, petitioner reported income and deductions under the cash receipts and disbursements method of accounting. Attached to petitioner's Federal income tax returns for 1982 and 1984 are Schedules C, Profit or (Loss) From Business or Profession, which report the following income and deductions from his public insurance adjuster business: 1982
1984
Gross receipts
$ 380,891.55 $ 760,249 Cost of Goods Sold
(160.35)
--  Total income
380,731.20 760,249 Advertising
5,762.36 11,836 Bank service charges
482.00 596 Car and truck expenses
8,802.90 11,829 Commissions
52,897.17 132,894 Depreciation
5,013.65 9,677 Dues and publications
761.31 2,848 Employee benefit programs
3,447.76 12,818 Freight
2,400.00 --  Insurance
2,679.00 7,000 Int. on bus. indebtedness
9,513.69 14,082 Laundry and cleaning
850.00 --  Legal and prof. service
21,146.48 17,822 Office supplies and postage
4,671.58 6,577 Rent on bus. prop.
6,641.00 9,546 Repairs
2,068.28 2,202 Supplies
6,446.20 2,891 Taxes
3,710.68 7,637 Travel and entertainment
25,652.37 25,930 Utilities and telephone
8,115.99 14,568 Wages
20,140.00 18,172 Escrow
173,851.15 446,552 Board up and Temp.
4,925.40 8,853 Son's labor
2,600.00 --  Business church
780.00 --  Political contribution
615.00 --  Christmas party
1,556.25 --  Business charities
3,808.92 --  Misc. general $ 20/week
1,040.00 2,080 Other expenses
--  6,790 Total deductions
380,379.14 773,200 Net profit or (loss)
352.06 (12,951)
*436 Respondent audited petitioner's 1982 and 1984 returns, and found an "absence of adequate records" from which to compute petitioner's taxable income. Accordingly, respondent reconstructed petitioner's income using the bank deposits plus cash expenditures method. Petitioner maintained two bank accounts during 1982. He maintained an account at the Brentwood Bank in St. Louis, Missouri (the first Brentwood account), which he used primarily, but not exclusively, for business purposes. He also maintained an account at the Southwest Federal Bank in St. Louis, Missouri (the Southwest account), which he used for personal purposes. During the audit of petitioner's returns, respondent's agent found that the balances of the above accounts on January 1, 1982, the total deposits made to the accounts during 1982, the transfers between the accounts during 1982, the deposit of loan proceeds into the accounts during 1982, the aggregate checks written on the accounts in 1981 that were outstanding at the beginning of 1982, the aggregate checks written in 1982 that were outstanding at the end of 1982, and the balances of the accounts at the end of 1982, were as follows: First
Brentwood
Southwest
Account
Account
Total
Balance 1/1/82
-- $ 2,259
$ 2,259
Total deposits
$ 394,029
43,018
437,047
made in 1982
Transfers between
-- -- 23,018
accounts
Deposit of
10,000
20,000
30,000
loan proceeds
Checks written in 1981
-- -- -- outstanding on 1/1/82
Checks written in 1982
-- -- -- outstanding on 12/31/82
Balance 12/31/82
5,492
9,993
15,485
*437 Based upon the stipulations of the parties, we find that the correct amounts are set out below: First
Brentwood
Southwest
Account
Account
Total
Balance 1/1/82
$ 18,984.26
$ 1,772.21
$ 20,756.47
Total deposits
393,608.35
44,004.66
437,613.01
made in 1982
Transfers between
--  21,600.00
21,600.00
accounts
Deposit of
10,000.00
20,000.00
30,000.00
loan proceeds
Checks written in 1981
2,858.87
1,251.19
4,110.06
outstanding on 1/1/82
Checks written in 1982
866.34
257.26
1,123.60
outstanding on 12/31/82
Balance 12/31/82
5,492.30
5,237.16
10,729.46
Petitioner maintained four bank accounts during 1984. They included the first Brentwood account and the Southwest account mentioned above. Petitioner also maintained a second account at the Brentwood Bank (the second Brentwood account) which, like the first Brentwood account, he used primarily, but not exclusively, for business purposes. He maintained an account at the St. John's Bank in St. Louis, Missouri (the St. John's account), under the name "John R. Caulfield". The record does not explain why petitioner maintained this account under a different name, or the purpose of the account. *438 Respondent's agent found that the balances of the above accounts on January 1, 1984, the total deposits made to the accounts during 1984, the transfers between the accounts during 1984, the aggregate checks written on the accounts in 1983 that were outstanding at the beginning of 1984, the aggregate checks written in 1984 that were outstanding at the end of 1984, and the balances of the accounts at the end of 1984 were as follows: First
Second
Brentwood
Southwest
Brentwood
St. John's
Account
Account
Account
Account
Total
Balance 1/1/84
$ 10,821
$ 1,298
$ 11,719
$ 60,403
$ 84,241
Total deposits
714,509
23,691
858,563
--
1,596,763
made in 1984
Transfers
554,113
9,200
262,005
--
825,318
between
accounts
Check written
45,989
307
--
--
46,296
in 1983
outstanding
on 1/1/84
Checks written
7,184
--
--
--
7,184
in 1984
outstanding
on 12/31/84
Balance
6,822
2,916
3,508
27,815
41,061
12/31/84
Based upon the stipulations of the parties, we find that the correct amounts are set out below: First
Second
Brentwood
Southwest
Brentwood
St. John's
Account
Account
Account
Account
Total
Balance 1/1/84
$ 10,821.00
$ 1,298.00
$ 11,719.00
$ 60,403
$ 84,241.00
Total deposits
829,855.83
23,691.00
602,462.63
-- 1,456,009.46
made in 1984
Transfers
593,112.91
9,200.00
73,508.00
-- 675,820.91
between
accounts
Checks written
45,989.37
307.00
-- -- 46,296.37
in 1983
outstanding
on 1/1/84
Checks written
7,153.63
-- -- -- 7,153.63
in 1984
outstanding
on 12/31/84
Balance
6,822.00
2,976.35
3,508.00
27,815
41,121.35
12/31/84
*439 Parenthetically, we note that during 1984 petitioner maintained a third account at the Brentwood Bank. The balance of the account was $ 80,000 on January 1, 1984, and on December 31, 1984, and no deposits were made to the account during the year. This account is not included in the above discussion because it does not affect respondent's reconstruction of petitioner's income under the bank deposits method. Nevertheless, we note that the beginning and ending balances set out above are $ 80,000 less than the amounts used by the agent. Respondent's agent found that during 1982 and 1984 petitioner spent $ 83,135 and $ 57,771, respectively, for personal living expenses. The agent also found that during 1982 and 1984, petitioner spent $ 12,561 and $ 22,002, respectively, to purchase capital assets. In the notice of deficiency, respondent determined that petitioner's net deposit of business receipts during 1982 amounted to $ 384,029. Based upon the stipulations of the parties, we find that the correct amount is $ 386,013.01. Set out below is respondent's computation as contained in the notice of deficiency, and the same computation using the amounts that were stipulated by the parties: *440 Notice of 1982
Deficiency
Revised Total Deposits:
First Brentwood account
$ 394,029
$ 393,608.35
Southwest account
43,018
44,004.66
437,047
437,613.01
Less:
Loan proceeds
30,000
30,000.00
Transfers between accounts
23,018
21,600.00
Net deposit of
384,029
386,013.01
business receipts
In the notice of deficiency, respondent also determined that petitioner's net deposit of business receipts during 1984 amounted to $ 771,445. Based upon the stipulations of the parties, we find that the correct amount is $ 780,188.55. Set out below is respondent's computation as contained in the notice of deficiency, and the same computation using the amounts that were stipulated by the parties: Notice of
1984
Deficiency
Revised Total Deposits:
First Brentwood account
$ 714,509
$ 829,855.83
Second Brentwood account
858,563
602,462.63
Southwest account
23,691
23,691.00
St. John's account
-- -- 1,596,763
1,456,009.46
Less:
Loan proceeds
-- -- Transfers between accounts
825,318
675,820.91
Net deposit of
771,445
780,188.55
business receipts
In the notice of deficiency, respondent determined that the total funds available *441 in petitioner's bank accounts during 1982 was $ 423,821. Based upon the stipulations of the parties at trial, we find that the correct amount is $ 444,653.56. Set out below is respondent's computation as contained in the notice of deficiency, and the same computation using the amounts that were stipulated by the parties: Notice of
1982
Deficiency
Revised Opening balances
$  2,259
$  20,756.47
Plus: total deposits
437,047
437,613.01
Less: closing balances
15,485
10,729.46
Plus: checks outstanding--
-- 1,123.60
current year
Less: checks outstanding--
-- 4,110.06
prior year
Total
423,821
444,653.56
In the notice of deficiency, respondent also determined that the total funds available in petitioner's bank accounts during 1984 were $ 1,600,831. Based upon the stipulations of the parties at trial, we find that the correct amount is $ 1,459,986.37. Set out below is respondent's computation as contained in the notice of deficiency, and the same computation using the amounts that were stipulated by the parties: Notice of
1984
Deficiency
Revised Opening balances
$  164,241
$  84,241.00
Plus: total deposits
1,596,763
1,456,009.46
Less: closing balances
121,061
41,121.35
Plus: checks outstanding--
7,184
7,153.63
current year
Less: checks outstanding--
46,296
46,296.37
prior year
Total
1,600,831
1,459,986.37
*442 In the notice of deficiency, respondent computed the funds which petitioner had available in his bank accounts during 1982 after subtracting the nondeductible expenditures made during the year from those accounts. We refer to this amount as the net funds available in 1982. Set out below is respondent's computation as contained in the notice of deficiency, and a revised computation based upon the stipulations of the parties: Notice of
1982
Deficiency
Revised
Total funds available
$ 423,821
$ 444,653.56
Less: nondeductible
expenditures:
personal living expenses
83,135
83,135.00
capital expenditures
12,561
12,561.00
transfers between accounts
-- 21,600.00
Net funds available for 1982
328,125
327,357.56
Similarly, in the notice of deficiency, respondent computed the funds which petitioner had available in his bank accounts during 1984 after subtracting the nondeductible expenditures made during the year from those accounts. We refer to this amount as the net funds available in 1984. Set out below is respondent's computation as contained in the notice of deficiency, and a revised computation based upon the stipulations of the parties: Notice of
1984
Deficiency
Revised
Total funds available
$ 1,600,831
$ 1,459,986.37
Less: nondeductible
expenditures:
personal living expenses
57,771
57,771.00
capital expenditures
22,002
22,002.00
transfers between accounts
813,318
675,820.91
divorce settlement
Net funds available for 1984
707,740
704,392.46
*443 The parties agree that based upon the deductions claimed on the Schedules C filed by petitioner for 1982 and 1984, petitioner deducted cash expenditures in the following amounts: 1982
1984
Total deductions
$ 380,379.14
$ 773,200
on Schedule C
Less: depreciation
5,013.65
9,677
Cash expenditures
375,365.49
763,523
reflected on Schedule C
The cash expenditures reflected on petitioner's Schedules C, as computed above, exceed the net funds available in petitioner's bank accounts. The computation of that excess for each of the years in issue as set forth in the notice of deficiency is as follows: 1982
1984
Schedule C expenses
$ 375,365
$ 763,523
paid in cash
Net funds available for
business expenditures
328,125
707,740
Business expenses paid
47,240
55,783
with undeposited funds
Respondent determined that the above excess for each year consists of business expenses paid by petitioner with funds that had not been deposited into one of petitioner's bank accounts. Accordingly, respondent added the above amounts to the net deposit of business receipts to arrive at petitioner's gross business receipts. The gross business receipts, as thus *444 computed, are more than the gross business receipts reported on petitioner's Schedules C. That computation is as follows: 1982
1984
1982
1984
Business expenditures paid by cash
$ 47,240
$ 55,783
Net deposits from business receipts
384,029
771,445
Gross business receipts
431,269
827,228
Less: gross receipts
380,731
760,249
reported on return
Amount unreported
50,538
66,979
Based upon the above, respondent determined that petitioner had understated the gross income realized from his public adjuster business, as reported on Schedule C, by $ 50,538 in 1982 and $ 66,979 in 1984. OPINION Unreported Income
In auditing petitioner's income tax returns for 1982 and 1984, respondent found an "absence of adequate records" from which to compute petitioner's taxable income, and respondent invoked the authority delegated under section 446(b) to reconstruct petitioner's income using the bank deposits plus cash expenditures method, described above. Based upon such reconstruction, respondent determined that petitioner had underreported his business income by $ 50,538 in 1982, and $ 66,979 in 1984. Petitioner bears the burden of proving that respondent's *445 determination is wrong. Rule 142, Tax Court Rules of Practice and Procedure; e.g., Estate of Mason v. Commissioner, 64 T.C. 651, 656-657 (1975), affd. 566 F.2d 2 (6th Cir. 1977). Petitioner does not challenge respondent's finding of inadequate records or otherwise seriously question respondent's authority to reconstruct his income "under such method as, in the opinion of the Secretary, does clearly reflect income." Sec. 446(b). In fact, petitioner has stipulated all of the pertinent information regarding his bank accounts in 1982 and 1984. The principal dispute between the parties involves petitioner's contentions that respondent's reconstruction overstates the amount of nondeductible expenditures made by petitioner during each of the years in issue and fails to take into account nontaxable sources of income. We shall address petitioner's arguments for each year below. At the outset, it is necessary to address three other issues raised by petitioner. First, petitioner renews his objection to the admission of the Statement of Income and Expenses of Joseph P. Caulfield filed in the Circuit Court for the County of St. Charles, *446 Missouri, in a proceeding styled "Re the Marriage of Joseph P. Caulfield, Petitioner and Glenda Ruth Caulfield, Respondent," number CV183-1213DR. Petitioner argues, without citing any authority, that the document cannot be admitted into the record of these cases: for lack of a proper foundation. the [sic] document purports to be a copy "certified" by a Deputy Clerk from the Circuit Clerk in St. Louis County, Missouri. Petitioner submits that to be used in this proceeding the docket and signature of the certifying clerk had to be "authenticated" by the Circuit Clerk for said Court. This "authorization" is accomplished by the Circuit Clerk indicating that she is the Circuit Clerk and that the Deputy Clerk prepared the document at her direction and that it is a true copy of same.
We disagree. The subject document bears the official seal of the Circuit Court of St. Charles County, Missouri, and a stamp which states as follows: CERTIFICATE OF TRUE COPY I, Susan E. Brown, Clerk of Circuit Court, within and for the County of St. Charles, State of Missouri, do certify that the foregoing is a true copy of an original document remaining on file and record in my office. *447 Witness my hand and SEAL of said court this 2 DAY OF MARCH, 1990, SUSAN E. BROWN, SUSAN E. BROWN, CLERK BY LESLIE EISENSTEIN, DEPUTY
The certification purports to have been signed by a deputy clerk of the circuit court. The above certificate complies with rule 902(4) of the Federal Rules of Evidence under which extrinsic evidence of authenticity is not a condition precedent to admissibility. Rule 902(4) of the Federal Rules of Evidence provides as follows: Extrinsic evidence of authenticity as a condition precedent to admissibility is not required with respect to the following: (1) Domestic public documents under seal. A document bearing a seal purporting to be that of the United States, or of any state, district, Commonwealth, territory, or insular possession thereof, or the Panama Canal Zone, or the Trust Territory of the Pacific Islands, or of a political subdivision, department, officer or agency thereof, and a signature purporting to be an attestation or execution. * * * (4) Certified Copies of Public Records. A copy of an official record or report or entry therein, or of a document authorized by law to be recorded or filed and actually recorded or filed *448 in a public office, including data compilations in any form, certified as correct by the custodian or other person authorized to make the certification, by certificate complying with paragraph (1), (2) or (3) of this rule * * *.
The subject certification bears the official seal of the circuit court and the signature of a deputy clerk of that court. This is all that rule 902(4) requires. We find nothing in rule 902(4) to require an additional certification as to the authority of the deputy clerk. Cf. United States v. Beason, 690 F.2d 439, 444 (5th Cir. 1982). The second preliminary point is petitioner's argument that he was denied an opportunity for administrative consideration of these cases. His entire argument on this point is as follows: Furthermore, the Respondent, in this case, violated IRS procedures and guidelines. No notice was given to Petitioner of "income tax examination changes". the [sic] statutory Notice of Deficiency * * * was the first written notice of any change in Petitioner's tax liability for 1982. As a result, Petitioner was deprived of any opportunity to pursue administrative relief afforded by the Respondent's *449 own guidelines.
Our first difficulty with the above argument is that petitioner did not introduce into the record of these cases any evidence to prove the factual contentions that the notice of deficiency was the first notice given to him of any change in his 1982 tax, and that he did not receive administrative consideration of his cases. Moreover, petitioner does not explain what relief, if any, he is entitled to receive as a result of having been deprived of administrative consideration of his cases, or the legal basis for such relief. In other cases in which the taxpayer was not afforded an administrative hearing prior to the issuance of the notice of deficiency, we have upheld the validity of the notice. See Boyer v. Commissioner, 69 T.C. 521, 543-544 (1977); Rimple v. Commissioner, T.C. Memo. 1985-245. Similarly, we see no basis to give petitioner relief in these cases. Finally, petitioner complains about the fact that there are differences between the amounts of bank deposits found in the subject notice of deficiency and the amounts stipulated by the parties at trial. While we note the differences, we disagree *450 with petitioner's argument that they prove "that the bank deposit method is totally inaccurate and improper method of attempting to calculate Petitioner's liability." To the contrary, it is clear that, in reconstructing a taxpayer's income, the Commissioner is not required to achieve "mathematical exactitude". E.g., Petzoldt v. Commissioner, 92 T.C. 661, 693-694 (1989); Harper v. Commissioner, 54 T.C. 1121, 1129 (1970). Furthermore, as discussed below, the unreported income determined by respondent for each of the years in issue is less than the amounts that would have been determined using the deposits stipulated by the parties. This suggests that respondent took a conservative approach in determining the amount of income omitted from petitioner's returns. We find no fault in respondent's approach in these cases. 1982 Taxable Year
Respondent found that the expenditures made by petitioner during 1982 exceeded the funds which were available in his bank accounts by $ 47,240. Respondent added that excess to the net deposits that had been made during the year, $ 384,029, and, thereby, determined that petitioner's *451 gross receipts from his business amounted to $ 431,269, $ 50,538 more than the amount reported on Schedule C of his 1982 return, $ 380,731. The following is a summary of respondent's reconstruction of petitioner's income for 1982 as determined in the notice of deficiency and as revised in accordance with the stipulations of the parties: 1982 Summary
Notice of Deficiency
Revised
Funds available
$ 423,821
$ 444,653.56
in banks
Deductible
$ 375,365
$ 375,365.14
expenditures
Non-deductible
expenditures:
Personal
83,135
83,135.00
living expenses
Capital items
12,561
12,561.00
Transfers
-- 21,600.00
between accounts
471,061
492,661.14
Excess
47,240
48,007.58
expenditures
over funds
Net deposits
384,029
386,013.01
of business
receipts
Gross
431,269
434,020.59
receipts--
as determined
Gross receipts--
380,731
380,731.00
reported
Gross receipts--
50,538
53,289.59
unreported
Petitioner's first contention is that respondent overstates the amount of nondeductible expenditures and, thereby, erroneously increases the unreported income computed under the bank deposits method. Set out below is a *452 schedule which shows the nondeductible expenditures determined by respondent in the notice of deficiency and the position of each of the parties regarding the nondeductible expenditures made by petitioner during 1982: 1982 Nondeductible Expenditures
Notice
Petitioner's Position
Personal living expenses:
Per check spread
$ 43,135
-- Loan repayment on 5/21/82
20,000
$ 20,000
Loan repayment on 4/08/82
20,000
20,000
Checks on Southwest acct. (Ex. 15)
-- 12,811
Loan repayment on 3/30/82
-- -- Loan repayment on 3/30/82
-- -- Food allowance, $ 50 per week
-- 2,600
Clothing allowance
-- 1,170
Loans to others
-- 272
Typewriter, calculator, etc.
-- 443
Stock purchases
-- 6,959
Personal portion of Sch. C expenses
-- 7,332
Unexplained expenditures, Southwest acct.
-- -- Subtotal
83,135
71,587
Capital expenditures:
Camaro automobile
11,318
-- Other capital items
1,242
1,242
Subtotal
12,560
1,242
Total
95,695
72,829
1982 Nondeductible Expenditures
Respondent's Position
Personal living expenses:
Per check spread
-- Loan repayment on 5/21/82
$ 20,000.00
Loan repayment on 4/08/82
20,000.00
Checks on Southwest acct. (Ex. 15)
12,811.00
Loan repayment on 3/30/82
4,000.00
Loan repayment on 3/30/82
10,000.00
Food allowance, $ 50 per week
-- Clothing allowance
-- Loans to others
3,072.00
Typewriter, calculator, etc.
-- Stock purchases
15,087.32
Personal portion of Sch. C expenses
8,984.59
Unexplained expenditures, Southwest acct.
20,766.71
Subtotal
114,721.62
Capital expenditures:
Camaro automobile
11,318.00
Other capital items
1,242.00
Subtotal
12,560.00
Total
127,281.62
*453 It is readily apparent from the above that petitioner concedes having spent $ 71,587 for personal living expenses and $ 1,242 to purchase certain capital assets. Thus, petitioner concedes having spent a total of $ 72,829 for personal living expenses and capital items; i.e., $ 22,866 less than the amount determined in the notice of deficiency, $ 95,695. It is also readily apparent from the above schedule that respondent contends that petitioner spent, at least, $ 114,721.62 for personal living expenses, and $ 12,560 for capital items. Thus, respondent contends that petitioner spent a total of $ 127,281.62; i.e., $ 31,586.62 more than the amount determined in the notice of deficiency. We note that respondent has not sought to increase the deficiency for 1982 based upon the contention, summarized above, that a greater amount of nondeductible expenditures was proven at trial than was taken into account in the notice of deficiency. Accordingly, it is not necessary for us to resolve all of the factual differences between the parties regarding each of the nondeductible expenditures summarized in the above schedule. If we find that petitioner spent at least $ 95,695, the amount determined *454 in the notice of deficiency, for personal living expenses and capital assets in 1982, then we must sustain respondent on this point. In addition to the amount conceded by petitioner in his post-trial brief, $ 72,829, we find, as further discussed below, that petitioner made loan repayments of $ 4,000 and $ 10,000, and spent $ 11,318 to purchase a Camaro automobile. Thus, we find that petitioner spent at least $ 98,147 for personal living expenses and capital assets. Accordingly, petitioner has failed to prove that respondent overstated the nondeductible expenditures made by petitioner during 1982. The loan repayments of $ 4,000 and $ 10,000 that are set forth in the above schedule are listed in petitioner's 1982 cash disbursements journal of checks written from petitioner's first Brentwood account, as follows: Date
Check No.
Description
Amount
3/30
864
Tower Grove Bank
$  4,051.60
loan $ 4,000
interest $ 51.60
3/30
865
Badin Bank
10,245.10
loan $ 10,000
interest $ 245.10
Petitioner admits that the loan repayments are among the personal expenses for 1982 established by the evidence presented at trial. Nevertheless, he contends that they cannot be taken *455 into account in respondent's bank deposits analysis because respondent failed to include them among the personal living expenses determined in the notice of deficiency. According to petitioner, "no timely assessment of this alleged additional deficiency was made and same is therefore, barred by the Statute of Limitations." In making this argument, petitioner fails to appreciate the fact that, as mentioned above, respondent is not asking the Court to redetermine a greater deficiency than that determined in the notice of deficiency. Petitioner also fails to appreciate the fact that once a notice of deficiency is issued, the running of the period of limitations on assessment is suspended during the period the Secretary is prohibited from assessing tax and, if a petition for redetermination is filed in this Court, the period is suspended until the decision of the Court becomes final, and for 60 days thereafter. Sec. 6503(a)(1). At this time, the period of limitations under section 6501(a) for assessing and collecting petitioner's 1982 income taxes is suspended. Therefore, even if respondent were seeking a greater deficiency, the period of limitations on assessment under section *456 6501(a) would not be a bar. Petitioner raises no other objection to taking the subject loan repayments into account. In fact, petitioner concedes that the subject loan repayments of $ 4,000 and $ 10,000 are among the personal expenses established by the evidence presented at trial. The issue here is whether petitioner has proven his contention that respondent's bank deposits plus cash expenditures analysis overstates the amount of his nondeductible expenditures in the form of personal living expenses and capital expenditures. Petitioner has advanced no reason why, in considering that issue, we cannot take into account the personal living expenses established at trial, including the subject loan repayment of $ 4,000 and $ 10,000. In the case of the Camaro automobile, petitioner denies that he spent $ 11,318 to purchase a Camaro automobile at the end of 1982. He asserts that he acquired the automobile under a "36-month installment contract". However, petitioner's testimony on this point is vague and self-serving, and petitioner failed to produce the installment contract he claims to have entered into. In this situation, we infer that the contract governing his acquisition of *457 the Camaro automobile would not be favorable to his position in these cases. Wichita Terminal Elevator Co. v. Commissioner, 6 T.C. 1158, 1165 (1946), affd. 162 F.2d 513 (10th Cir. 1947). Petitioner's second contention is that respondent's recomputation of petitioner's income fails to take into account the fact that he had nontaxable funds of $ 46,646. Petitioner asserts that $ 30,000 of such amount came from loan proceeds, $ 10,000 of which was deposited into the first Brentwood account, and $ 20,000 of which was deposited into the Southwest account. Petitioner asserts that the remaining $ 16,646 consists of the combined opening balances of petitioner's bank accounts on January 1, 1982, $ 20,756.47, less the checks which had been written on those funds in 1981, but were still outstanding on January 1, 1982, $ 4,110.06. As to the first point, petitioner is wrong in contending that respondent's determination does not take into account loan proceeds of $ 30,000. The "bank deposit method worksheet" for 1982 which is attached to the subject notice of deficiency shows, at "NOTE G", that petitioner's bank deposits were reduced *458 by "loan proceeds deposited" in the amount of $ 30,000. As to petitioner's second point, we agree that respondent's reconstruction, as set forth in the notice of deficiency, does not take into account the correct opening balances of petitioner's bank accounts less checks outstanding. The "bank deposit method worksheet" for 1982, which is attached to the notice of deficiency, shows opening balances of $ 2,259 and no checks outstanding, whereas the parties have stipulated that the aggregate balance in petitioner's accounts was $ 20,756.47, and the aggregate checks outstanding on January 1, 1982, was $ 4,110.06. We also agree that this error would tend to overstate the amount of unreported income. Nevertheless, when respondent's reconstruction of petitioner's income is revised to take into account all of the amounts stipulated by the parties, including the correct opening balance of petitioner's accounts and checks outstanding on January 1, 1982, the amount of omitted income computed thereunder is $ 53,289.59, that is, more than the amount determined in the notice of deficiency. That revised computation is summarized above. Thus, while we agree with petitioner that respondent's *459 reconstruction is wrong on this point, petitioner has failed to prove that the error caused the omitted income determined by respondent to be overstated. The third contention made by petitioner is that respondent's reconstruction fails to take into account "substantial non-taxable dollars to petitioner" from "an automobile accident and medical malpractice suit". Petitioner, of course, bears the burden of proving that he realized such nontaxable income. E.g., Parks v. Commissioner, 94 T.C. 654, 658-659 (1990); Tokarski v. Commissioner, 87 T.C. 74, 75-76 (1986); Estate of Mason v. Commissioner, 64 T.C. 651, 656-657 (1975), affd. 566 F.2d 2 (6th Cir. 1977). Petitioner introduced no documents to substantiate that assertion. He relies entirely upon the following question and answer during his direct testimony at trial: Q Mr. Caulfield, with regard to that category, do you know of or do you believe that you had any other funds available to you during the tax year 1982, either from nontaxable sources or from business income? A Mr. Suddarth, that's really impossible *460 to say. I have researched and looked through my records. I was involved in an automobile accident; I had a medical malpractice suit, Your Honor. Some time in the eighties, both of those litigations settled. But to the best of my knowledge and the best of my records that I've been able to reassemble, this is an accurate picture of my financial position for the year 1982.
The above testimony does not set forth the date or the amount of the recoveries which petitioner claims to have received. Accordingly, we find that petitioner has failed to establish that he realized additional nontaxable income during 1982, and we reject petitioner's contention that respondent erred by failing to take any such recoveries into account. Taxable Year 1984
Respondent found that the expenditures made by petitioner during 1984 exceeded the funds which were available in petitioner's bank accounts by $ 55,783. Respondent added that excess to the net deposits that had been made during the year, $ 771,445, and determined that petitioner's gross business receipts amounted to $ 827,228, $ 66,979 more than the amount he reported, $ 760,249. The following is a summary of respondent's reconstruction *461 of petitioner's income for 1984, as determined in the notice of deficiency, and as revised in accordance with the stipulations of the parties: 1984 Summary
Notice of Deficiency
Revised
Funds available
$ 1,600,831
$ 1,459,986.37
in banks
Deductible
$ 763,523
$ 763,523.00
expenditures
Non-deductible
expenditures:
Personal living
57,771
57,771.00
expenses
Capital items
22,002
22,002.00
Transfers between
813,318
675,820.91
accounts
1,656,614
1,519,116.91
Excess expenditures
55,783
59,130.54
over funds
Net deposits
771,445
780,188.55
Gross receipts --
827,228
839,319.09
as determined
Gross receipts --
760,249
760,249.00
reported
Gross receipts --
66,979
79,070.09
unreported
Petitioner's first contention is that respondent overstated petitioner's personal living expenses for 1984, a component of nondeductible expenditures, and thereby overstated the amount of unreported income for the year. Set out below is a schedule which shows the personal living expenses determined by respondent in the notice of deficiency and the position of each of the parties regarding the personal living expenses paid *462 by petitioner during 1984: 1984 Nondeductible Expenditures
Notice
Petitioner's Position
Personal living expenses:
Personal expenses
$ 47,170
-- Divorce settlement
10,601
$ 10,601
Checks on Southwest acct. (Ex. 17)
-- 14,965
Food allowance
-- 2,080
Clothes allowance
-- 1,040
1984 depreciation schedule
-- 4,197
Home alarm
-- 1,990
Washer and dryer
-- 1,148
Continental Ins.
-- 1,227
Riding lawn mower
-- 667
Misc. personal expenses
-- 490
Personal portion of Sch. C expenses
-- 2,873
Personal property
-- 242
IRA
-- 2,000
Travel, entertainment and boat
-- 1,881
Springfield Associates
-- 6,900
Unexplained expenditures, Southwest acct.
-- -- Weekly payments of $ 250, 49 weeks
-- -- Payment to Sears, 9/13
-- -- Checks to cash, 1/16 and 8/29
-- -- Total
57,771
52,301
1984 Nondeductible Expenditures
Respondent's Position
Personal living expenses:
Personal expenses
-- Divorce settlement
10,601.00
Checks on Southwest acct. (Ex. 17)
14,965.00
Food allowance
-- Clothes allowance
-- 1984 depreciation schedule
-- Home alarm
1,990.00
Washer and dryer
1,148.00
Continental Ins.
1,673.45
Riding lawn mower
667.00
Misc. personal expenses
394.00
Personal portion of Sch. C expenses
2,890.00
Personal property
-- IRA
2,000.00
Travel, entertainment and boat
1,881.00
Springfield Associates
6,900.00
Unexplained expenditures, Southwest acct.
7,047.77
Weekly payments of $ 250, 49 weeks
12,250.00
Payment to Sears, 9/13
551.82
Checks to cash, 1/16 and 8/29
3,060.00
Total
68,019.04
*463 It is readily apparent from the above that respondent determined in the notice of deficiency that petitioner had spent $ 57,771 for personal living expenses and petitioner concedes that he spent $ 52,301 for personal living expenses, $ 5,470 less than the amount set out in the notice of deficiency. It is also apparent from the above schedule that respondent contends that petitioner actually spent, at least, $ 68,019.04 for personal expenses during 1984. However, respondent does not seek to increase the 1984 deficiency based upon the additional expenditures. Therefore, as was true for 1982, we need not resolve the disagreements between the parties concerning each of the additional expenditures asserted by respondent. We will sustain respondent's determination if the sum of the amounts conceded by petitioner, $ 52,301, plus other expenditures equals or exceeds the amount determined in the notice of deficiency, $ 57,771. We note that one additional expenditure asserted by respondent, as shown in the above schedule, is labeled unexplained expenditures from petitioner's Southwest account in the amount of $ 7,047.77. This amount consists of the total expenditures from the Southwest *464 account during 1984, $ 22,012.65 (beginning balance $ 1,298, plus deposits of $ 23,691, less ending balance of $ 2,976.35), less the expenditures from the account that petitioner concedes are personal expenses, $ 14,964.88. At trial, petitioner introduced a schedule of checks written from the Southwest account totaling $ 14,964.88 which he testified were personal expenditures. On cross-examination, respondent's attorney asked petitioner whether the remaining expenditures from the Southwest account, $ 7,047.77, were personal expenditures. The question by respondent's attorney and petitioner's reply are as follows: Q Well, I'll try to ask the question a little more precisely this time. You have identified approximately $ 15,000 in personal expenditures from your Southwest Bank account. There were deposits including $ 9,200 in transfers -- there were total deposits of approximately $ 22,000. Would that remaining sum of approximately $ 7000 -- was that used for business or personal expenses? A I don't know. The money was intermingled and used for both.
Respondent's post-trial brief sets forth the following proposed finding of fact: 48. During the taxable year *465 1984 petitioner expended $ 22,012.65 from his Southwest Federal Bank Account for personal purposes.
In his reply brief, petitioner entered no objection to the above proposed finding of fact. Accordingly, we find that all of the funds expended from petitioner's Southwest account during 1984, including the so-called unexplained expenditures from the Southwest account in the amount of $ 7,047.77, were personal expenditures. The personal living expenses conceded by petitioner in his post-trial brief, $ 52,301, plus the additional personal living expenses paid from petitioner's Southwest account, $ 7,047.77, total more than the personal living expenditures determined in the notice of deficiency. Therefore, we find that petitioner has failed to prove that respondent's reconstruction of petitioner's 1984 income overstates the amount of personal living expenses. Petitioner raises a second objection to respondent's reconstruction of his 1984 income. He contends that the reconstruction fails to take into account nontaxable income in the sum of $ 74,615. Petitioner's discussion of this point is not entirely clear, but it appears that he computes such amount as shown in the second *466 column below: Aggregate opening balance
$ 95,133
$ 84,241.00
in bank accounts
Less: prior year's checks
32,489
46,296.37
Difference
62,644
37,944.63
Rounded to
60,000
Plus: deposits to
24,315
23,691.00
Southwest account
Less: transfers to
9,700
9,200.00
Southwest account
74,615
52,435.63
The third column of the above schedule is the same computation using the amounts stipulated by the parties. We have a number of difficulties with petitioner's contention that the above is a computation of nontaxable income which respondent's recomputation fails to take into consideration. First, we find no basis in the record of these cases for the contention, implicit in the above computation, that the net deposits to petitioner's Southwest account during 1984 consisted entirely of nontaxable income. Furthermore, contrary to petitioner's contention, all of the other amounts used in petitioner's computation are properly taken into account in respondent's reconstruction of petitioner's income for 1984 under the bank deposits plus cash expenditures method described above. Self-Employment Taxes
Respondent determined that petitioner is liable for self-employment *467 taxes under section 1401 for 1982 and 1984. Section 1401 imposes self-employment taxes on the "self-employment income" of every individual. Section 1402(b) defines "self-employment income" as the "net earnings from self-employment" derived by an individual during the taxable year with certain exceptions that are not relevant in these cases. The term "net earnings from self-employment" is generally defined in section 1402(a) as the gross income derived by an individual from any "trade or business" carried on by such individual, less the deductions attributable to such trade or business. Petitioner bears the burden of proving that he is not liable for the taxes imposed by section 1401 as determined by respondent. Rule 142(a). Petitioner introduced no evidence on this issue at trial, and he made no argument concerning self-employment taxes in his post-trial briefs. Accordingly, we sustain respondent's determination that petitioner is liable for self-employment taxes. Negligence Additions Under Section 6653(a)
Respondent determined that petitioner is liable for additions to tax for negligence pursuant to section 6653(a)(1) and (2). Section 6653(a)(1) imposes an addition *468 to tax equal to 5 percent of the underpayment, if any part of the underpayment for the year is due to a taxpayer's negligent or intentional disregard of respondent's rules or regulations. Section 6653(a)(2) imposes an addition to tax equal to 50 percent of the interest payable under section 6601 with respect to any portion of the underpayment which is attributable to the negligence or intentional disregard of the rules or regulations. Petitioner bears the burden of proving that no part of the underpayment was due to his negligence or intentional disregard of respondent's rules and/or regulations. Rule 142(a); Axelrod v. Commissioner, 56 T.C. 248, 258-259 (1971). Petitioner introduced no evidence on this issue at trial, but argues in his answering brief that there was no underpayment for 1982 and 1984 and, therefore, no addition to tax under section 6653. As discussed above, we sustain respondent's determination of an underpayment for 1982 and 1984. Accordingly, we also sustain respondent's determination of the additions to tax under section 6653(a)(1) and (2). Addition to Tax Under Section 6661
Respondent determined that petitioner is *469 liable for the addition to tax pursuant to section 6661(a) for 1984. Section 6661(a) imposes an addition to tax equal to 25 percent of any underpayment attributable to a "substantial understatement" of income tax for the taxable year. In the case of a noncorporate taxpayer, an understatement is substantial if it exceeds the greater of 10 percent of the tax required to be shown on the return, or $ 5,000. Sec. 6661(b)(1). Petitioner bears the burden of proof on this issue. Rule 142(a). Petitioner presented no evidence on this issue at trial but argues in his answering brief "that since no understatement [sic] exist the penalty is inapplicable." As discussed above, we sustain respondent's determination of underpayments for 1982 and 1984 attributable to substantial understatements of income tax. Accordingly, we also sustain respondent's determination of the addition to tax under section 6661. For the foregoing reasons, Decisions will be entered for respondent.