726-15

CAUSE NO. PD-0726-15

IN THE

TEXAS COURT OF

CRIMINAL APPEALS

AUSTIN, TEXAS

ORIGINAL

RECEIVED IN
COURT OF CRIMINAL APPEALS

AUG 27 2015

Abel Acosta, Clerk

MARK ANTHONY ESTRADA,
PETITIONER

V

THE STATE OF TEXAS

---

## PETITIONER'S PETITION FOR DISCRETIONARY REVIEW

---

APPEAL CAUSE NO. 13-13-00283-CR

TRIAL CAUSE NO. CR-712-09-C

---

MARK ANTHONY ESTRADA, PRO SE
TDCJ# 1568684
McCONNELL UNIT
3001 SOUTH EMILY DRIVE
BEEVILLE, TX. 78102

FILED IN
COURT OF CRIMINAL APPEALS

AUG 27 2015

Abel Acosta, Clerk

# TABLE OF CONTENTS

PAGE

INDEX OF AUTHORITIES     ii

STATEMENT REGARDING ORAL ARGUMENT     iii

STATEMENT OF THE CASE     iii

PROCEDUAL HISTORY     iv

GROUNDS FOR REVIEW     v

ARGUMENT     1.

ARGUMENT FOR GROUND ONE     2.

ARGUMENT FOR GROUND TWO     6.

ARGUMENT FOR GROUND THREE     11.

CONCLUSION     11.

PRAYER     12.

UNSWORN DECLARATION, CERTIFICATE OF SERVICE AND
APPENDIX     13.

i

# INDEX OF AUTHORITIES

## STATE CASES                                                          PAGE

ALANIZ V STATE              2011 TX.App.Lexis 9599            10

AMUNSON V STATE            928 sw2d 601 (TX.App.San Antonio 1996) 7

BELL V STATE              90 sw3d 301 (Tx.Crim.2002)          5

BIRDWELL V STATE          276 sw3d 642                        5

BLACKLOCK V STATE         235 sw3d 231 (TX. Crim.2007)        5

EUBANKS V STATE           113 sw3d 562 (TX.App.Dallas 2003)   2

GARCIA V STATE            327 sw3d 269 (TX.Crim.2010)         5

GUITERREZ V STATE         337 sw3d 883 (TX.Crim.2011)         4

KUTZNER V STATE           75 sw3d 427 (TX.Crim.2002)          2

MORTON V STATE            324 sw3d 674 (TX.Crim.2011)         4

PRIBLE V STATE            245 sw3d 466 (TX.Crim.2008)         5,10,11

REEDY V STATE             214 sw3d 567 (TX.Crim.2008)         7

ROUTIER V STATE           273 sw3d 241 (TX.Crim.2002)         3,4

SMITH V STATE             165 sw3d 361 (TX.Crim.2003)         4

WINFREY V STATE           323 sw3d 875 (TX.Crim.2010)         10


## SUPREME COURT CASES

GRANNIS V ORDEAN          34 S.CT. 779 (1914)                 11

HOLMES V S.CAROLINA       126 S.CT. 1727(2006)                11

IN RE OLIVER              68 S.CT. 499 (1948)                 11


## FEDERAL CASES

TURNER V McKASKLE         721 F.2d 999 (5th Cir.1983)         7

## STATEMENT REGARDING ORAL ARGUMENT

Petitioner respectfully submits that oral argument may not serve to enlighten the court as petitioner is currently incarcerrated and files this petition Pro Se. Although petitioner shows that the facts are adequately presented in the petitioner's previously filed motion's and appeal brief's. Petitioner request's that this right be reserved to oral argument should court appoint counsel.

## STATEMENT OF THE CASE

Petitioner was convicted of murder and sentenced to life in prison on April 17,2009 by a jury in the 139th Dist. court in Hidalgo County,Texas, Honorable Judge "Bobby" Flores presiding in Cause NO.CR-712-08-C. After filing a notice of appeal the court appointed Mr. Alfredo Morales,Jr as counsel. A Ander's Brief was filed by Mr. Morales in which Petitioner filed a Pro Se Appeal Brief. The 13th Court of Appeals affirmed the trial courts conviction on August 4,2011. A Petition for Discretionary Review was filed on March 16,2012, and was refused on April 25, 2012.

Petitioner filed a Motion for DNA testing pursuant to TCCP. Art.64.01 on June 26,2012, where the trial Judge denied the Motion for DNA testing the same day that the State filed it's opinion on April 25,2013. Notice of appeal was filed and Appeal Brief was filed on August 1, 2013. The 13th Court of Appeals Affirmed the denial on April 23,2015. A Motion for Rehearing was filed on May 22,2015 and denied on May 27,2015.

iii

## PROCEDUAL HISTORY

April 17,2009     - Estrada is sentenced to life in prison

November 5,2010     - Estrada files Pro Se Appeal Brief

August 4,2011     - 13th Court of Appeals Affirms conviction

March 16,2012     - Estrada files Petition for Discretionary Review

April 25,2012     - Petition is refused

June 26,2012     - Estrada files Motion for DNA testing, Motion to appoint counsel for DNA testing, request for Judicial Notice, Affidavit of Statement of Facts, Affidavit of Indigency

April 25,2013     - 139th DIst. Court denies Motion for DNA testing

August 1,2013     - Estrada files DNA Appeal Brief

April 23,2015     - 13th Court of Appeals Affirms trial courts denial of DNA Motion for testing

May 22,2015     - Estrada files Motion for Rehearing

May 27,2015     - 13th Court of Appeals denied Motion

## GROUNDS FOR REVIEW

**GROUND ONE:**

Whether the 13th Court of Appeals decision to affirm the 139th District Courts denial of Estrada's Motion for DNA testing was diametricaly opposed and contary to previous holdings of other Texas court of Appeals as well as the holdings of the Texas Court of Criminal Appeals as applied to DNA evidence?

**GROUND TWO:**

Whether the 13th Court of Appeals decision was solely relied upon the State's presentment of pure speculation of mere circumstancial evidence to convict Estrada, where this evidence was outside the realm of evidence pertaining to DNA, for which is the basis of this appeal?

**GROUND THREE:**

Whether the ruling by the 13th Court of Appeals is contrary to, and is an unreasonable application of clearly established United State's Supreme Court holdings regarding the right to DNA testing?

## ARGUMENT

The petitioner has provided facts from the trial record in his Motion for DNA testing and in the subsequent Pro Se Appeal Brief's to show that Estrada's issues are similar in nature as in other Texas case's regarding exculpatory DNA evidence. Where in those case's the Texas Court of Criminal Appeals has granted DNA testing of items containing biological material.

The Petitioner has requested for the testing of several items in evidence that contain biological material (BLOOD) or to retest items for DNA that were previously tested but can be subjected to a testing beyond the PCR method and to use a newer method such as the mitochondrial method to extract DNA in order to obtain a profile. The items requested to be tested have been reported that apparent blood was detected and that the bulk evidence has been returned to the Pharr Police Department to preserve thier biological constituents.

## ARGUMENT FOR GROUND ONE

## TEXAS CASE'S WHERE DNA TESTING WAS GRANTED

In BLACKLOCK V STATE 235 sw3d 231 (TX.Crim. 2007), DNA testing was performed on evidence at the time of the inmates trial, but it was inconclusive on the issue of identity. The inmates motion for testing alleged and showed that the victim's lone attacker was the donor of the material for which the inmate sought DNA testing and thus exculpatory DNA test results, excluding the inmate, would have established his innocence. The Court of Appeals for this case decided that the appellant failed "to provide facts in support of his motion" to establish "by a preponderance of the evidence that he would not have been convicted if exculpatory results had been obtained through DNA testing." The Court of Criminal Appeals decided on this record, exculpatory DNA test results, excluding appellant as the donor of this material, would establish appellant's innocence.

In KUTZNER V STATE 75 sw3d 427 (TX. Crim.2002), the Court of Criminal Appeals decided that a defendant proves his right to DNA testing of evidence by showing that exculpatory results would establish his innocence.

In Estrada's case the 13th Court of Appeals held in it's affirmation opinion that Petitioner failed to show how the requested DNA testing would prove his innocence by a preponderance of the evidence or how DNA testing would reach more accurate and probative results. That a convicted person must do more than simply ask for the testing so that he might be able to raise an argument. citing EUBANKS V STATE 113 sw3d 562,566(TX.App.Dallas 2003).

The 13th Court of Appeals also held that if DNA from an unknown 3rd party was present on the knife, it could potentially place that

2.

that party at the scene at the time of the killing and support Petitioner's "unknown intruder" theroy. citing **ROUTIER V STATE 273 sw3d 241,244** (TX.Crim.2008). Where in the **ROUTIER** case no weapon was requested for DNA testing, but the Court of Criminal Appeals held that "Defendant was entitled to DNA testing of blood stain on a tube sock found in a alley, blood stain's from her night shirt, facial and pubic hair and stains from a door leading to the garage, which could have corroborated her account that an unknown intruder entered her home." The 13th Court of Appeals denial of Petitioner's DNA motion is contrary to the holdings in the **ROUTIER** case. In the **ROUTIER** case, she requested the testing of certain biological material results of which she contends will bolster her claim that an unknown intruder was in the house and undermine the plausibility of the state's evidence that the crime scene was staged. **ROUTIER** contended that, had the jury known of the exculpatory results from the collective DNA testing of these various evidentiary items, it more likely than not that the jury would not convicted her. It was stated that "if no results were infact obtained through the old testing and the likelyhood of obtaining a result is significally enhanced by the newer "clen up" technique, we (the court) think that the appellant has satisfied Art. 64.01(b)(2)."

The items requested by the Petitioner are similar in nature as in the **ROUTIER** case. There was blood flakes on the garage door and a lab conducted DQ alpha DNA testing and were resulted in "no human DNA was detected", this exhibit was admitted at the time of the trial and it did show that blood was detected on the garage door. The Court of Criminal Appeals concluded that adding DNA evidence that would corroborate the appellant's account of an unknown

3.

intruder to the evidentiary mix could readily have tipped the jury's verdict in the appellant's favor. In our (the court) estimation, DNA evidence showing that an unknown intruder-indeed, the same unknown intruder- had left blood on the night shirt and on the door from the utitlity room to the garage, along with a facial hair and pubic hair would more likely than not have caused the jury to harbor a reasonable doubt as to the appellant's guilt and decline to convict her. The Court of Criminal Appeals held that the defendant's request satisfied Art.64.03(a)(2)(A), because blood from an unknown 3rd party would place that party at the scene at the time of the killings and would support the defendant's theory of an "unknown intruder" committing the crimes. **ROUTIER @ 257-59**, see **MORTON V STATE 324 sw3d 674** (TX.crim.2011).

In Estrada's case the 13th Court of Appeals held in it's opinion that, in determining whether DNA testing should be ordered, we look at the record at the time of the conviction. citing **SMITH V STATE 165 sw3d 361,364** (TX. Crim.2003), where "appropriate inquiry assumes exculpatory DNA results were available at trial." The Petitioner's trial record clearly states that only (10) ten items were tested for DNA, where over 70 items were collected as evidence. Two items out of the ten that were tested resulted in "no interpretable DNA profiles were obtained from items 2A (swabbing from green trashcan) and 36 (sponge found in kitchen sink)", where both of these items did contain apparent blood on them. As for the evidence that was in blood, the Petitioner was excluded as the donor of that DNA. Item 22A was a blood soaked bra, and it was resulted that the lab could not match the DNA on that item.

In **GUITERREZ V STATE 337 sw3d 883** (TX.Crim.2011), the Court of

4.

Criminal Appeals stated, "the bottom line in post-conviction DNA testing is whether the testing, if it shows that the biological material does not belong to the defendant, will establish by a preponderance of the evidence, that he did not commit the crime as either principal or party." **@ 900.**

The 13th Court of Appeals stated in Estrada's case that, after reviewing the trial courts record, we concluded that even if DNA other than appellant's and the victims DNA was found on the items appellant wants tested, the evidence would still not show by a perponderance of the evidence that the DNA was from a different assailant. The 13th Court of Appeals cited **PREBLE V STATE 245 sw3d 466,470** (TX.Crim.2008), concluding that if DNA testing would not determine the identity of the person who commited the offense or would not exculpate the accused, then Art.64.03(a)(2)(A) has not been met; as well as citing **BELL V STATE 90 sw3d 301 ,306** (TX.Crim. 2002), "that presence of another person's DNA at the crime scene will not, without more, constitute affirmative evidence of appel-lant's innocence." This is in opposition to where the Court of Criminal Appeals noted "that exculpatory DNA testing excluding the defendant as the donor of the biological material would establish his innocance, which was precisley the situation in which the legislature intended to provide port-conviction DNA testing." SEE **GARCIA V STATE 327 sw3d 269,271**, citing **BLACKLOCK@ 232-33.** "The purpose of DNA testing under Art.64.03, is to provide an avenue by which a defendant may seek to establish his innocence by excluding himself as the perpatrator of the offence. **GARCIA @273** citing **BIRDWELL V STATE 276 sw3d 642.**

The Petitioner shows that testing of the items requested would determine the identity of the person who committed the crime, as

5.

it will corroborate with the Petitioner's theory of an unknown intruder, along with the facts in evidence that he has presented to this court as well to the lower courts. In the Petitioner's Motion for DNA testing and in his Appeals Brief's, he has provided facts from the record to surpass the "without more" as stated in the **BELL** case, to support that the evidence will show a 51% chance that someone else committed the offense and if those exculpatory results were made known at his trial, the outcome would have been different as the Petitioner would not have been convicted.

## ARGUMENT FOR GROUND TWO

### STATE'S EVIDENCE

The 13th Court of Appeals ruled in it's affirmation opinion that the state presented substancial evidence of appellant's guilt. The state claimed that the Petitioner has not satisfied by a perponderance of the evidence as required by Art.64.01(B)(2)(a). The only evidence that was presented by the state at trial was only mere circumstancial evidence, provided by it's own weight, only raises a strong suspicion of guilt, but it is not strong enough to satisfy each and every element of the charged offense of murder.

The 13th Court of Appeals stated that the evidence showed that Estrada met the victim, invited her to his friends home where he was staying at the time; engaged in intercourse with her; and had been alone with her when she suffered multiple fatal stab wounds. That the Petitioner put the victim's body in a trashcan; left the scene on his friends ATV; and later called his friend to warn him to clean up the blood that was left in the bathroom.

This evidence alone or even combined, can not amount to proof beyond a reasonable doubt that the Petitioner committed the murder.

6.

SEE **REEDY V STATE 214 sw3d 567,570** (TX.App.Austin 2006); **AMUNSON V STATE 928 sw2d 601**(TX.App. San Antonio 1996); **TURNER V McKASKLE 721 F2d 999** (5th cir.1983). The state's evidence did not prove that the Petitioner 1.) intenionally or knowingly caused the death of the victim, or 2.) intenionally or knowingly caused serious bodily injury and commit an act clearly danerous to human life that caused the death of the victim. The state did not prove that the Petitioner acted in any manner in thier evidence to support each and every element of the offense of murder.

## PETITIONER'S EVIDENCE

The Petitioner will show facts from the trial record at the time he was convicted, to support that he did not commit the murder.

First of all, the Petitioner has claimed that he had left the house while the victim used the bathroom to freshen up after they had sex, and it was upon his return to the house when he discovered the crime scene. The Petitioner's only reason for moving the body was so that his friend's children would not see the body as they might want to use the bathroom after returning from the long trip, as they were on vacation. The Petitioner did leave the area, but only for his own safety as he did not know if the killer's were still in the home or nearby and might return.

Norma Jean Farley, the Forensic Pathologist determined that the victim had been beat about the head and was stabbed several times in the neck, which those wounds were the caused of death. The Petitioner did not have any cuts or scratches on him to indicate that a struggle or fight took place between the victim and himself. Futhermore, none of the DNA found under the victim's fingernails belonged to Estrada as he was excluded from that DNA.

7.

Doctor Farley stated that few of the wounds on the victim's throat were pointed on two sides, indicating a double edge blade, where the knife in evidence is a single edge blade knife. No forensic was done on the knife to see if the knife in evidence was the actual murder weapon. It was said that it was only a knife that had blood on it that was brought in as evidence, but it was never compared to the wounds. Eventhough the knife was covered in blood, no fingerprints were developed off of the knife. Most of the items in evidence did contain apparent blood on them, and yet two items were resulted in "no interpretable DNA profiles were obtained". Another item was a blood soaked bra and it too could not be said as to whose DNA it matched.(RR6p.72ln.6-8),(RR6p.108ln.6-8)

## UNKNOWN INTRUDER THEORY

The severness of the victim's wounds would have left an enormous amount of blood splatter as one wound was on the cartid artery and another was in the center of the throat, where both of these wounds were fatal. The Petitioner found the victim in the master bathroom, where there was alot of blood all over the walls and the floor as well. Several photographs showed at trial where there were drops of blood found throughout the house outside of the master bathroom area.

In the livingroom a tissue with blood was found, another tissue with blood was found in the kitchen bar area, drops of blood were on a corner of the dinningroom table as well as on the floor just below that. There was a small ice chest in the garage that had red stains that appeared to be blood on it and some latex gloves were inside with similar red stains; it was said that a field test was conducted and it was determined that it was not human blood and could not tell if it was animanl blood or not. This

8.

evidence was not collected as it was a CSI tech with no state certification and for his lack of experiance, at trial no report was submitted to show of the field test results. Behind the master bedroom door, there were drops of blood seen, and a lone bloody shoeprint was photographed just six feet away from the bathroom's door way where the Petitioner found the victim, and it was resulted that the Petitioner's shoes even though they had blood on them, did not match that shoeprint. These facts are similar to the **ROUTIER** case as these items in evidence all contain blood on them and these items were all found inside the house. The state claimed that these items in evidence that contained blood on them could have been innocently left prior to the crime having taken place. Petitioner strongly disagrees as these items were of blood and it is safe practise that when anyone cuts themselves, it is instinct to quickly clean up that blood.

None of the state's expert witnesses could prove in their report of analysis that the Petitioner was responsible for committing the murder. Thus the state relied upon circumstancial evidence that was obtained by an illegal arrest by the San Antonio P.D. where they acted without the issuance of probable cause or a arrest warrant, even though the state claimed that one had been issued. The state's evidence of the illegally obtained interrogation state- ment conducted by the SAPD was used to bolster probable cause in order to get a judge to sign a warrant as one had not been issued. (RR6P.111n.15-21) Petitioner's statement was used to inflame the minds of the jury to believe that the events mentioned, was enough to suffice as guilt of the Petitioner's actions, where the jury convicted him of the murder. This interrogation statement was

9.

"fruit" of the illegal arrest and should have been suppressed from evidence, as where if it were to have been suppressed and if the items requested for DNA testing resulted as the Petitioner claims, the outcome of the trial would have been different.

It is well recognized by the state appellant courts that the state must do more than "infer" guilt, but rather to "prove beyond a reasonable doubt" to meet thier burden of proof. In **ALANIZ V STATE 2011 Tex App. lexis 9599**,the reviewing court held," it is the obligation and responsibility of appeallant courts to ensure that the evidence presented actually supports a conclusion that the defendant committed the crime that was charged. In addition, if the evidence at trial raises only a suspicion of guilt, even a strong one, then that evidence is insufficient to convict." ALSO SEE **WINFREY V STATE 323 sw3d 875,878-79** )TX. Crim.2010),"essential elements of the crime...must be proven beyond a reasonable doubt." Therefore the state's evidence did not satisfy each and every element of the Texas Penal Code 19.02 of murder.

A state can not enforce a statute that prevents a defendant in a criminal trial from introducing evidence to prove that some-one else committed the offense.SEE **PRIBLE V STATE @467.**

The Petitioner submitts that if these items in evidence that contain biological material were tested and resulted to belong to a unknown 3rd party and presented to the jury at trial, that these results would have pointed to the actual perpatrator. With these results known at trial, defense counsel would have proven to the jury that an unknown intruder did commit the murder other than the Petitioner and these results would exculpate him where the jury would not have convicted him at all, where there were no other evidence to point the finger of guilt towards the Petitioner.

10.

## ARGUMENT FOR GROUND THREE

### SUPREME COURT RULINGS REGARDING DNA

The gregory rule dissussed in **HOLMES V SOUTH CAROLINA 126 S.CT. 1727 (2006)**, held that, evidence offered by a defendant as to the commission of the crime by another person is admissible if it raises reasonable inferences or presumptions as to the defendant's innocence and is limited to facts that are inconsistant with his own guilt. The court held that defendant evidence of a 3rd party guilt can not be excluded based soley on the strength of the prosecutions case because to do so would deny the defendant the constitutional right to a meaningful opportunity to present a complete defense. **PRIBLE V STATE 245 sw3d 466,469.** By excluding the strength of only one party's evidence, no logical conclusion can be reached regarding the strength of contrary evidence offered by the otherside to rebut or cast doubt. **HOLMES @17828**

Procedual fairness is an opportunity to be heard. **IN RE OLIVER 68 S.CT. 499**(1948),**GRANNIS V ORDEAN 34 S.CT. 779**(1914). That opportunity would be an empty one if the state were premitted to exclud competent, reliable evidence bearing on the credibility of a confession, when such evidence is central to the defendant's claim of innocence.

### CONCLUSION

The Petitioner believes that a reasonable jurist would see cause to debate whether the courts denial of the Motion for DNA testing should be allowed to stand or that just cause does exsist to rehear the Petitioner's Motion to retest the DNA evidence that could provide reasonable doubt to overturn the conviction or to test DNA evidence that has never been tested to resolve controverted issues of fact and unresolved issues of law.

11.

In addition the Petitioner presents a affidavit from a Forensic Pathologist, a one Dr. Harry J. Bonnell, M.D., who has a plethora amount of experiance. This affidavit is to provide proof for the Petitioner's "unknown intruder " theory, where at the crime scene there are several highly questionable items that were collected as evidence, that do contain potential DNA evidence. These items do contain biological material and have been secured in the proper chain of custody where they can still be subjected to further DNA testing.

As Dr. Bonnell mentions from reading the record and reviewing the lab reports, that these minimal individual droplets of blood could not belong to the victim, but may well obtian DNA from the actual attacker. Thus, for these reasons it is more likely than not that if these items in evidence are tested or re-tested with a newer method beyond the PCR technique, that the results would be exculpatory. Therefore, the Petitioner restates that if these results would have been made known to the jury at trial, the jury would have determined a different outcome.

## PRAYER

Petitioner prays that this court, in all thinhss to consider this Petition for Discretionary Review and grant his Motion for DNA testing and to appoint counsel for DNA testing on the items requested that contain biological material to determine the identity of the donor. Where these results would raise a more than 51% chance that the Petitioner would not have been convicted if these results were made known at trial.

Respectfully submitted,

MARK ANTHONY ESTRADA

12.

## UNSWORN DECLARATION

I, Mark A. Estrada, Petitioner declares under penalty of perjury, that the above and foregoing is true and correct, this pursuant to the TX. Civil Practices and remedies 132.001.

*Mark A. Estrada*

MARK ANTHONY ESTRADA
TDCJ#1568684
McCONNEL UNIT
3001 SOUTH EMILY DR.
BEEVILLE,TX. 78102

## CERTIFICATE OF SERVICE

I, Mark A. Estrada, do sertify that the foregoing and attached Petition for Discretionary Review was mailed on this day the _19th_ of _August_ 2015 to the following parties with first class postage prepaid: ABEL ACOSTA-CLERK OF THE TEXAS COURT OF CRIMINAL-APPEALS, P.O.BOX 12398, CAPITAL STATION, AUSTIN,TX.78711, and to the STATE PROSECUTING ATTORNEY, P.O.BOX ~~12465~~ 13046, AUSTIN, TX. 78711.-3046

*Mark A. Estrada*

MARK ANTHONY ESTRADA
*August 19, 2015*

## APPENDIX

A copy of Dr. Harry J. Bonnell, M.D. Affidavit (2) pages, and his Curriculum and Vitae (4) pages are attached.

A copy of the 13th Court of Appeals memorandum opinion is hearby attached to the foregoing Petition for Discretionary Review.

13.

## I. AFFIDAVIT OF HARRY J. BONNELL, M.D.

Re: Mark A. Estrada, TDCJ#1568684

I, Harry J. Bonnell, M.D., declare as follows:

1. I am a medical doctor, currently employed as a Forensic Pathologist licensed to practice Medicine in the State of California. A true and correct copy of my curriculum vitae is attached as **Exhibit A**.

2. I attended Georgetown University Medical School in Washington, D.C., and graduated from that program in 1979. I have taught at the University of Washington, Madigan Army Medical Center, King County Corrections Center, Uniformed Services University of Health Sciences, University of Cincinnati College of Medicine, and the School of Medicine of the University of California, San Diego.

3. From 1991-2001, I was the Chief Deputy Medical Examiner for the Office of the Medical Examiner in San Diego, California. I have also been Chief Deputy Coroner and Director of Forensic Pathology of Hamilton County, Ohio, Staff Pathologist in the Forensic Sciences Department at the Armed Forces Institute of Pathology, and Assistant Medical Examiner of King County, Washington.

4. I have personally performed over 7000 autopsies and provided sworn testimony more than 585 times in the Superior Courts of twenty states, six Federal Court jurisdictions, and eight military courts.

5. In preparing this affidavit, I reviewed the entire trial transcript as well as DNA reports.

1

6.     Based on my education, training and experience, and my review of these materials, it is my opinion to a reasonable degree of medical certainty that:

- The injuries suffered by the victim were not immediately incapacitating but would have bled profusely immediately following infliction.

- Because of this, any individual droplets or areas of minimal blood would not be expected to originate from the victim; they might well belong to the attacker if the victim attempted to defend herself.

- Great strides in DNA analysis have been made since 2008 when the original testing was done and previously non-interpretable results may be able to be interpretted.

7.     Had I been consulted by defense prior to trial, I would have been available to consult and provide trial testimony as required, and am still willing to do so. I am not being reimbursed in any manner for rendering this opinion.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document, to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

Executed this 20th day of July, 2015 in San Diego, California.

HARRY J. BONNELL, M.D.

JULIO SIMOES
COMM. #1960159
Notary Public-California
SAN DIEGO COUNTY
My Comm. Exp. DEC 9, 2015

2

Jurat
State of California
County of San Diego
Subscribed and sworn to (or affirmed)
before me on this 20 day of July
20 15 by Harry J. Bonnell,
proved to me on the basis of satisfactory evidence
to be the person(s) who appeared before me.

Signature

(Notary seal)

# CURRICULUM VITAE

Harry J. BONNELL, M.D.
Forensic Pathology Consultant
6910 Monte Verde Drive
San Diego, California 92119-1511

Tel: 619 698 6388

E-Mail: bonnell@4n6pathology.com

## EDUCATION AND TRAINING

| | | |
|---|---|---|
| UNDERGRADUATE: | Georgetown University<br>Washington, D.C. | BA 1965-1968 |
| MEDICAL EDUCATION: | Georgetown University<br>Washington, D.C. | MD 1975-1979 |
| RESIDENCY: | Veterans Administration Medical Center<br>Martinez, California          Anatomic Path | 1979-1981 |
| | University of Washington<br>Seattle, Washington          Anatomic Path | 1982-1983 |
| FELLOWSHIP: | Office of the Medical Examiner<br>Seattle, Washington          Forensic Path | 1981-1984 |
| CERTIFICATION: | Anatomic & Forensic Pathology | 1985 |
| LICENSURE: | California, 1979 & 1991(active)<br>Washington, 1981 (inactive)<br>Ohio, 1987 (inactive) | |

## MILITARY SERVICE

| | | |
|---|---|---|
| U.S. Army, Military Police | Rank of Captain | 1969-1973 |
| U.S. Air Force, Medical Corps | Rank of Major | 1984-1987 |

## ACADEMIC APPOINTMENTS

Instructor in Pathology                                                              1981-1984
 University of Washington
 Seattle, Washington

Instructor in Pathology                                                              1981-1984
 Madigan Army Medical Center
 Fort Lewis, Washington

Instructor, King County Corrections Center                         1983-1984
 Rehabilitation Program
 Seattle, Washington

Adjunct Assistant Professor                                              1985-1987
 Uniformed Services University of Health Sciences
 Bethesda, Maryland

Assistant Clinical Professor, Pathology                             1987-1991
 University of Cincinnati College of Medicine
 Cincinnati, Ohio

Associate Clinical Professor, Pathology                            1992-2006
 U.C. San Diego School of Medicine
 San Diego, California

## EMPLOYMENT HISTORY

1981-1984:  Assistant Medical Examiner, King County (Seattle)
            Washington

1984-1987:  Staff Pathologist, Forensic Sciences Department,
            Armed Forces Institute of Pathology, Washington, D.C.

1987-1991:  Chief Deputy Coroner and Director of Forensic
            Pathology, Hamilton County (Cincinnati), Ohio

1991-2001:  Chief Deputy Medical Examiner
            San Diego County, California

2001-Present: Self-employed consultant

## PROFESSIONAL AFFILIATIONS

American Academy of Forensic Sciences (1980-present)
National Association of Medical Examiners (1980-2011)
Parents of Murdered Children
   Member, Board of Trustees (1991- 2015)
   Member, Second Opinion Services (1998-present)
San Diego County Child Fatality Review Committee (1991- 2001)
                                  Chair/Co-Chair 1993-98
San Diego County Domestic Violence Review Committee (1997-2001)
San Diego Citizen Review Board on Police Practices (2005-2013)

## PUBLICATIONS

Terminal Air Embolus Associated with Pneumatosis Cystoides
Intestinalis, Am J For Med & Path, March, 1982.

Antemortem Chemical Hypothyroxinemia, J For Sci, January, 1983.

Boot Top Fractures in Pedestrians: A Forensic Masquerade, Am J For
  Med & Path, June, 1983.

Synchronous Bilateral Seminomas and Teratoma, Henry Ford Hospital
  Med Journal, December, 1983.

Ethanol in Sequestered Hematomas: Quantitative Evaluation, Am J
Clin Path, 1984.

Left Pontine Lipoma, Arch of Path, 1985.

Correlation of Physical Findings with Circumstances Surrounding
Death in Hangings, J For Sci, 1985.

A Procedure for the Investigation of Anesthetic/Surgical Deaths, J For Sci, 1985.

Fatty Liver in Sudden Childhood Death: Implications for Reye's
  Syndrome, Am J Dis Children, 1986.
  **also printed in French edition.

Wah Mee Massacre: the Murder of 13 Chinese Adults, Am J For Med &
  Path, December, 1986.

Clinical and Pathologic Aspects of Cardiomyopathy from Ipecac
Administration in Munchausen's Syndrome by Proxy, Pediatrics, 1996.
  *** also extracted for Quarterly Child Abuse Medical Update

Post-mortem Drug Redistribution, Forensic Sciences Review, July, 2001.


## OTHER QUALIFICATIONS

Medicolegal autopsies:  More than 7000 performed personally.

Testimony experience:  Provided sworn testimony more than 590 times
              in 20 states,  as well as federal courts and courts martial.

Aircraft Mishaps:  37 on-site investigations to include autopsies.

2008 – present: Appointed to Expert Witness Panel, Los Angeles Superior Court

## OTHER ACTIVITIES

| | |
|---|---|
| Eucharistic Minister, St. Therese Parish, San Diego | 1992 – present |
|       Parish Council (Communications Chair) | 1996-1998. |
| Little League Umpire (Volunteer) | 1992 - present |
|       San Carlos LL Umpire-in-Chief | 1994 – 1998 |
|       District 33 Patriot League (Seniors) Umpire-in-Chief | 1997 – 2008 |
| Synchronized Swimming Judge (volunteer) Level III | 1994 – 2008 |

## MOST VALUED AWARDS

1973 – US Army Meritorious Service Medal
1986 – US Army Meritorious Service Medal (1st Oak Leaf Cluster) while serving in US
         Air Force
1987 – Department of Defense Commendation Medal
1996 – Foundation For Improvement of Justice Medal ($10,000 award)
1999 – Physician of the Year, San Diego County Child Abuse Coordinating Committee
2001 – Little League Umpire Service Award
2002 – First Responder Award (San Diego International Airport)
2003 – Empty Shoes Award (Parents of Murdered Children)
2007 - Selected for Europe/Middle East/Africa Little League Regional Tournaments



# NUMBER 13-13-00283-CR

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

MARK ANTHONY ESTRADA
A/K/A MARK ESTRADA
A/K/A MARK ANTHONY
MONCADA ESTRADA,                                                    Appellant,

v.

THE STATE OF TEXAS,                                                 Appellee.

On appeal from the 139th District Court
of Hidalgo County, Texas.

# MEMORANDUM OPINION

### Before Justices Benavides, Perkes, and Longoria
### Memorandum Opinion by Justice Perkes

Appellant Mark Anthony Estrada appeals the trial court's denial of his motion for post-conviction DNA testing.[1]   *See* TEX. CODE CRIM. PROC. ANN. art. 64.01 (West,

---

[1] Texas Code of Criminal Procedure article 64.05 provides for an appeal of the denial of a post-

Westlaw through 2013 3d C.S.). By two issues, appellant complains the trial court erred by denying his motion because: (1) the trial court applied an incorrect exculpatory legal standard; and (2) he would not have been convicted of murder if exculpatory results had been obtained through DNA testing. We affirm.

## I. POST-CONVICTION BACKGROUND[2]

Appellant was convicted of murder and sentenced to life in prison. Appellant's counsel filed an *Anders* brief on appeal, and appellant filed a pro se brief in response. After review, we concluded that the record did not support any meritorious claims, and affirmed the trial court's judgment. *See Estrada v. State*, No. 13-09-00493-CR, 2011 WL 3370407 (Tex. App.—Corpus Christi Aug. 4, 2011, pet. ref'd) (mem. op.) (not designated for publication). The Texas Court of Criminal Appeals refused appellant's petition for discretionary review.

Appellant subsequently filed his "motion to request counsel [for] DNA testing", and his "motion for [post-conviction] DNA testing." Appellant requested DNA testing on the following items: "two swabs from the bathroom floor railing; dentures from the bathroom floor; toilet brush handle; cross pendent from the bathroom floor; bra from blue trash can in bathroom; broken necklace on shower floor; broken jewelry from bathroom; knife found unwiped on shower floor; sponge on kitchen floor; tissue at kitchen bar; swab from master

conviction motion for forensic DNA testing. *See* TEX. CODE CRIM. PROC. ANN. art. 64.05.

[2] Inasmuch as this is a memorandum opinion and the parties are familiar with the facts, we will not recite them here except as necessary to advise the parties of the Court's decision and the basic reasons for it. *See* TEX. R. APP. P. 47.4.

2

bedroom; damaged quarter of earring; tape lift; tissue paper living room left outlet[3]; and two swabs from lifting handle on green trash can".

The trial court denied appellant's motions, and entered findings of fact and conclusions of law in support thereof.[4] In this regard, the trial court made the following conclusions of law:

## CONCLUSIONS OF LAW

1. A motion may request forensic DNA testing only of evidence that (1) was not previously subjected to DNA testing, or (2) although previously subjected to DNA testing, can be subjected to testing with newer testing techniques that provide a reasonable likelihood of results that are more accurate and probative that the results of the previous test. *See* TEX. CODE CRIM. PROC. art. 64.01(b) (2012). Petitioner has not shown that biological material exists which could be subjected to forensic DNA testing.

2. In light of the significant evidence of the Petitioner's guilt, the Petitioner has not shown that he would not have been convicted based upon the results of additional forensic DNA testing. Article 64.03 requires a convicted person to establish by a preponderance of the evidence that he would not have been convicted if exculpatory results had been obtained through DNA testing. TEX. CODE CRIM. PROC. art. 64.03(a)(2)(A) (2012). Exculpatory results that would merely "muddy the waters" are insufficient to show that the defendant would not have been convicted. *Kutzner v. State*, 75 S.W.3d 427, 439 (Tex. Crim. App. 2002).

3. The defendant has failed to present reasonable grounds for a motion for forensic DNA testing to be filed, and his request for the appointment of counsel should therefore be denied. TEX. CODE CRIM. PROC. art. 64.01(c) (2012).

## II. STANDARD OF REVIEW AND APPLICABLE LAW

---

[3] "Living room left outlet" refers to the location where investigators located the tissue paper.

[4] Although the trial court did not expressly state that it took judicial notice of the trial record, we are permitted to presume it took judicial notice of the record. *Vahlsing, Inc. v. Missouri Pac. R.R. Co.*, 563 S.W.2d 669, 674 (Tex. Civ. App.—Corpus Christi 1978, no writ). We may also, in exercise of our discretion, take judicial notice of "adjudicative facts" for the first time on appeal. *Watkins v. State*, 245 S.W.3d 444, 455–56 (Tex. Crim. App. 2008) (citing TEX. R. EVID. 201).

3

Chapter 64 of the Code of Criminal Procedure requires the judge of the convicting court to order DNA testing when requested by a convicted person if it finds the convicted person has established by a preponderance of the evidence that he would not have been convicted if exculpatory results had been obtained through DNA testing. TEX. CODE CRIM. PROC. ANN. art. 64.01, 64.03; *see Ex parte Gutierrez*, 337 S.W.3d 883, 889 (Tex. Crim. App. 2011). Specifically, Chapter 64 states, in relevant part:

(a) A convicting court may order forensic DNA testing under this chapter only if:

(1) the court finds that:

(A) the evidence:

(i) still exists and is in a condition making DNA testing possible; and

(ii) has been subjected to a chain of custody sufficient to establish that it has not been substituted, tampered with, replaced, or altered in any material respect; and

(B) identity was or is an issue in the case; and

(2) the convicted person establishes by a preponderance of the evidence that:

(A) the person would not have been convicted if exculpatory results had been obtained through DNA testing; and

(B) the request for the proposed DNA testing is not made to unreasonably delay the execution of sentence or administration of justice.

TEX. CODE CRIM. PROC. ANN. art. 64.03(a).

In reviewing the trial court's chapter 64 rulings, we give "almost total deference" to the trial court's findings of historical fact and application-of-law-to-fact issues that turn on witness credibility and demeanor, but we consider de novo all other application-of-law-to-fact questions. *See Ex parte Gutierrez*, 337 S.W.3d 883, 890 (Tex. Crim. App. 2011);

4

*See also Olivarez v. State*, Nos. 13-11-00483-CR, 13-11-00484-CR, 2012 WL 5187911 (Tex. App.—Corpus Christi Oct. 18, 2012, no pet.) (mem. op.) (not designated for publication). In determining whether DNA testing should be ordered, we look at the record at the time of the conviction. *See* TEX. CODE CRIM. PROC. ANN. art. 64.03(a)(2); *Smith v. State*, 165 S.W.3d 361, 364 (Tex. Crim. App. 2005) (appropriate inquiry assumes exculpatory DNA results were available at trial).

## III. Discussion

By his first issue, appellant contends the trial court applied an incorrect legal standard in its analysis. Specifically, appellant argues that the exculpatory burden of proof standard discussed in *Kutzner* has been superseded by subsequent amendment of Chapter 64. *See Kutzner v. State*, 75 S.W.3d 427, 439 (Tex. Crim. App. 2002), *superseded by statute* TEX. CODE CRIM. PROC. ANN. art. 64.02(a)(2), *as recognized in Ex parte Gutierrez*, 337 S.W.3d at 890.[5] In this regard, appellant is apparently assuming that because the trial court cited *Kutzner* in its conclusions of law, the trial court applied an incorrect legal standard to his request for DNA testing. We disagree.

---

[5] *Kutnzer* applied an earlier version of article 64.03 of the Texas Code of Criminal Procedure that has since been amended. *See Kutzner v. State*, 75 S.W.3d 427, 439 (Tex. Crim. App. 2002). At that time, the statute read, in relevant part:

(2) the convicted person establishes by a preponderance of the evidence that:

(A) a *reasonable probability* exists that the person would not have been prosecuted or convicted if exculpatory results had been obtained through DNA testing; . . . .

*See* Act of April 5, 2001, 77th Leg., R.S., ch. 2, § 2, 2001 Tex. Gen. Laws 2, 2–4 (amended 2003, 2007, & 2011) (emphasis added) (current version at TEX. CODE CRIM. PROC. ANN. art. 64.03(a)(2) (West, Westlaw through 2013 3d C.S.)).

5

The trial court properly stated in its conclusions of law that "[a]rticle 64.03 requires a convicted person to establish by a *preponderance of the evidence* that he would not have been convicted if exculpatory results had been obtained through DNA testing." This is a correct statement of the current law. *See* TEX. CODE CRIM. PROC. ANN. art. 64.03(a)(2)(A). Although appellant complains about the trial court's statement that "exculpatory results that 'muddy the waters' are insufficient to show that [he] would not have been convicted," such a conclusion is also correct. *See Gutierrez*, 337 S.W.3d at 888 (holding that "favorable" DNA test result must be the sort of evidence that would affirmatively cast doubt upon validity of inmate's conviction; otherwise, DNA testing would simply "muddy the waters"). We overrule appellant's first issue.

By his second issue, appellant argues that he established by a preponderance of the evidence that he would not have been convicted if exculpatory results had been obtained through DNA testing. *See* TEX. CODE CRIM. PROC. ANN. art. 64.03(a)(2)(A).

During the trial, appellant's defense was premised on a theory that an unknown intruder committed the murder. He now claims that "[g]iven the degree of unidentified prints in blood, various items such as bloody tissues, bloody sponge, bloody shoe/ fingerprint, the blood splatter beyond the master bathroom, and the blood on the ice chest with the gloves inside of it, it is apparent that a lone intruder tried to remove his own presence and stage a secondary crime scene and leaving through an entry that was not tested for prints or DNA." Appellant's argument essentially suggests that if the items he wants tested contain the DNA from any person other than himself or the victim, it would cast doubt that appellant was, in fact, the person who committed the murder.

6

Appellant fails to show how the requested DNA testing would prove his innocence by a preponderance of the evidence or how DNA testing would reach more accurate and probative results. A convicted person must do more than simply ask for the testing so that he might be able to raise an argument. *Eubanks v. State*, 113 S.W.3d 562, 566 (Tex. App.—Dallas 2003, no pet.). For instance, if DNA from an unknown third party was present on the knife, it could potentially place that party at the scene at the time of the killing and support appellant's "unknown intruder" theory. *See Routier v. State*, 273 S.W.3d 241, 244 (Tex. Crim. App. 2008) (holding that defendant was entitled to DNA testing of blood stain on tube sock found in alley, blood stains from her night shirt, facial hair and pubic hair, and stains from door leading to garage, which could have corroborated her account that an unknown intruder entered her home). The blood from the knife, however, was tested and the only DNA recovered from it belonged to the victim.

After reviewing the trial court's record, we conclude that even if DNA other than appellant's and the victim's DNA was found on the items appellant wants tested, the evidence would still not show by a preponderance of the evidence that the DNA was from a different assailant. *See Prible v. State*, 245 S.W.3d 466, 470 (Tex. Crim. App. 2008) (concluding that if DNA testing would not determine the identity of the person who committed the offense or would not exculpate the accused, then article 64.03(a)(2)(A) has not been met); *see also Bell v. State*, 90 S.W.3d 301, 306 (Tex. Crim. App. 2002) (en banc) (holding that presence of another person's DNA at crime scene will not, without more, constitute affirmative evidence of appellant's innocence).

At trial, the State presented substantial evidence of appellant's guilt. The evidence showed that appellant met the victim; invited her to his friend's home where he was staying at the time; engaged in intercourse with her; and had been alone with her when she suffered multiple fatal stab wounds. The evidence also showed that the stab wounds were not consistent with the victim suffering a convulsion or committing suicide, as appellant later claimed. Further, there was evidence that appellant put the victim's body in a trash can; left the scene on his friend's ATV; and later called his friend to warn him to clean up the blood that was left in the bathroom.

Because appellant did not show by a preponderance of the evidence that exculpatory DNA tests would have proven his innocence, Appellant did not meet his burden of proof for obtaining post-conviction DNA testing. We overrule appellant's second issue.

## IV. CONCLUSION

We affirm the trial court's orders.

GREGORY T. PERKES
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
23rd day of April, 2015.

8

Main A. Estrada #1568684
McConnell Unit
3001 South Emily Dr.
Beeville, TX. 78102

Legal Mail

Abel Acosta — Clerk
Texas Court of Criminal Appeals
P.O. Box 12308
Capital Station
Austin, TX. 78711

